**2017 UT App 136**

## THE UTAH COURT OF APPEALS

KIRKPATRICK MACDONALD,
Appellant,
*v.*
LEE ANNE MACDONALD,
Appellee.

Opinion
No. 20150785-CA
Filed August 3, 2017

Third District Court, Silver Summit Department
The Honorable Kara Pettit
No. 104500031

Troy L. Booher, Julie J. Nelson, and Bart J. Johnsen,
Attorneys for Appellant

Matthew A. Steward and Shannon K. Zollinger,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES STEPHEN L. ROTH and KATE A. TOOMEY concurred.[1]

MORTENSEN, Judge:

¶1 After roughly twenty years of marriage, Kirkpatrick MacDonald (MacDonald) and Lee Anne MacDonald (now Fahey) divorced after stipulating to alimony payments and the division of their property. Fahey sold some of the land awarded to her and invested the proceeds, which now provide her a substantial income stream. MacDonald petitioned the trial court to adjust the alimony that he stipulated to pay because, he

---

1. Judge Stephen L. Roth participated in this case as a member of the Utah Court of Appeals. He retired from the court before this decision issued.

claimed, Fahey's new income stream constitutes a substantial material change in circumstances. The trial court denied the petition and MacDonald appeals. We affirm.

BACKGROUND

¶2 Fahey and MacDonald married in June 1991. Irreconcilable differences arose and MacDonald filed for divorce in February 2010. The parties engaged in mediation, which resulted in an agreement in December 2010 (the Agreement). MacDonald and Fahey signed the Agreement in October and November 2011, respectively. The parties submitted the Agreement to the court in December 2011.

¶3 The Agreement awarded Fahey three pieces of real property in the Preserve Development in Summit County. One of these lots is the property at issue (the Property). The Agreement also provided that MacDonald "pay the Homeowner's Association fees and property taxes on [the Property] for a period of five years . . . or until [Fahey] sells [the Property]." If sold, Fahey "shall reimburse [MacDonald] for those payments without interest." The Agreement further required that MacDonald pay Fahey alimony until December 2020 or earlier if she remarried, cohabited, or died. The parties stipulated that alimony payments would begin at $2,000 per month and increase to $6,000 per month beginning in January 2013. The Agreement contained no language specifically conditioning alimony upon any aspect of the parties' real property division, the subsequent disposition of the property, or upon Fahey's needs. MacDonald was awarded all real property from the marriage not specifically awarded to Fahey.[2] In addition, MacDonald paid $200,000 in cash to Fahey before he

---

2. This included a $6.5 million brownstone building and a $1.5 million apartment, both in New York City.

signed the Agreement. He further agreed to pay monthly installments, described as an additional property settlement, for a total of $103,500, beginning with a payment of $4,500 per month and later decreasing to $4,000 per month. The trial court entered the Decree of Divorce and Findings of Fact and Conclusions of Law in January 2012, incorporating all terms of the Agreement.

¶4     Sometime between the parties signing the Agreement and the court entering the Decree, a buyer offered MacDonald $1,425,000 to purchase the Property. According to MacDonald, this price was approximately twice what he anticipated the Property was worth. The parties agreed the Property should be sold and signed a sale contract before the Decree was entered. The sale closed in late January 2012, and Fahey deposited the proceeds, $1,240,000, into her trust account. Fahey's trust account was apparently set up prior to receiving the funds from the sale of the Property, and it already held the $200,000 cash settlement MacDonald had paid Fahey as part of the Agreement. In 2013, Fahey deposited another $498,000 from the sale of other property. As of April 2015, Fahey's trust account contained $1,740,000 and she was expected to earn $45,000 per year on her investments.

¶5     In January 2013, MacDonald filed a petition to modify the Decree, asking that the trial court terminate his alimony obligations. MacDonald argued that Fahey's investment of funds from the sale of the Property and the subsequent interest income generated by that investment constituted a substantial material change in circumstances.

¶6     The court denied the petition after a two-day trial, concluding that the sale of the Property and the investment of the sale proceeds did not constitute a substantial material change in circumstances. The trial court ruled "that [MacDonald] ha[d] not shown a substantial change of circumstances from the time of the Decree that was not foreseen or contemplated by the

Decree, and therefore denie[d] the Petition to Modify on those grounds." Further, the trial court found that "the parties, in their Agreement, which contained both the property division and the setting of alimony, contemplated that [Fahey] was going to sell those lots and was going to use the proceeds of the sale of those lots to pay expenses." MacDonald appeals the trial court's order.

ISSUE AND STANDARD OF REVIEW

¶7     MacDonald appeals the trial court's determination that he failed to show a substantial material change in circumstances, not foreseeable at the time of the divorce. As we have explained, this court generally will "review a district court's determination to modify or not to modify a divorce decree for an abuse of discretion." *Fish v. Fish*, 2016 UT App 125, ¶ 5, 379 P.3d 882; *see Earhart v. Earhart*, 2015 UT App 308, ¶ 5, 365 P.3d 719 ("A district court's determination regarding whether a substantial change of circumstances has occurred is presumptively valid, and our review is therefore limited to considering whether the district court abused its discretion.").

ANALYSIS

¶8     MacDonald contends that the trial court's determination that the facts did not warrant a modification of alimony was an abuse of discretion. He argues that Fahey's new income stream from her interest earned on investments constitutes "a substantial change in circumstances that occurred after the divorce and was not foreseeable at the time of divorce." MacDonald relies on *Bolliger v. Bolliger*, 2000 UT App 47, 997 P.2d 903, which requires "evidence that the change was foreseen at the time of the divorce to preclude a finding of changed circumstances." *Id.* ¶ 11 n.3. We disagree and affirm.

I. The Foreseeability Standard

¶9     The standard to be applied to a petition to modify an award of alimony is set forth in the Utah Code, which reads:

> The court has continuing jurisdiction to make substantive changes and new orders regarding alimony based on a substantial material change in circumstances not foreseeable at the time of the divorce.

Utah Code Ann. § 30-3-5(8)(i)(i) (LexisNexis 2013). This provision, amending section 30-3-5, was added in 1995 and has been the controlling statute for alimony modifications since.[3] *See Wilde v. Wilde*, 969 P.2d 438, 441 n.1 (Utah Ct. App. 1998). Accordingly, the language of this provision controls the question presented in this appeal.

¶10     We construe statutes according to their plain meaning if possible.

> The primary objective of statutory interpretation is to ascertain the intent of the legislature. Since [t]he best evidence of the legislature's intent is the plain language of the statute itself, we look first to the plain language of the statute. In so doing, [w]e presume that the legislature used each word advisedly. . . . When we can ascertain the intent of the legislature from the statutory terms alone, no

---

3. We note that this case solely concerns modification of an award of alimony under a decree of divorce. The "change in circumstances required to justify a modification of a divorce decree varies with the type of modification sought." *Haslam v. Haslam*, 657 P.2d 757, 758 (Utah 1982).

other interpretive tools are needed, and our task of statutory construction is typically at an end.

*Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (alterations in original) (citations and internal quotation marks omitted).

> When we interpret a word within a statute, we first consider its plain meaning. In looking to determine the ordinary meaning of nontechnical terms of a statute, our starting point is the dictionary. If not plain when read in isolation, [a word] may become so in light of its linguistic, structural, and statutory context.

*Nichols v. Jacobsen Constr. Co.*, 2016 UT 19, ¶ 17, 374 P.3d 3 (alteration in original) (citations and internal quotation marks omitted). "We also presume that when the legislature amends a statute, it intended the amendment to change existing legal rights." *Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 261 (Utah 1998) (citation and internal quotation marks omitted). Indeed, after section 30-3-5 was amended, this court held that the 1995 amendment "regulates a party's right to receive alimony and is a substantive change in the law." *See Wilde*, 969 P.2d at 442–43.

¶11    The dictionary defines "foreseeable" as "being such as may reasonably be anticipated." *Foreseeable*, Webster's Third Int'l Dictionary 890 (1971). From the linguistic and structural position of this term in the statute, and assuming that the legislature used not only the word but its form advisedly, we conclude that the legislature purposely did not use the verb "foresee" in its past tense, "foreseen." This distinction is important. If the provision required that the changed circumstances warranting modification were not actually foreseen, then a petitioner would bear the burden of showing that when the decree was entered the parties or the court had not actually contemplated that such a change would occur. Instead, the legislature employed the adjective "foreseeable," which includes not only those

circumstances which the parties or the court actually had in mind, but also circumstances that could "reasonably be anticipated" at the time of the decree.

¶12 Thus, the intent of the 1995 amendment[4] is unambiguous—a change in circumstances, even a substantial one, can only form the basis for the modification of alimony if that circumstance was not *foreseeable*—as opposed to actually foreseen—"at the time of the divorce." *See* Utah Code Ann. § 30-3-5(8)(i)(i). Accordingly, we conclude that, as it pertains to alimony, only a substantial material change in circumstances not foreseeable, i.e., not reasonably capable of being anticipated at

---

4. Prior to the 1995 amendment, the statute provided:

> The court has continuing jurisdiction to make subsequent changes or new orders for the support and maintenance of the parties, the custody of the children and their support, maintenance, health, and dental care, or the distribution of the property and obligations for debts as is reasonable and necessary.

Utah Code Ann. § 30-3-5(3) (Michie Supp. 1994); *see Wilde v. Wilde*, 969 P.2d 438, 441 & n.1 (Utah Ct. App. 1998) (discussing the 1995 amendment). Thus, before 1995 a single standard applied to the continuing power of the district court to modify ("make subsequent changes or new orders") a decree as to alimony ("the support and maintenance of the parties"), child support ("the custody of children and their support"), and property and debt distribution. *See* Utah Code Ann. § 30-3-5(3). The law was changed. Now alimony and child support modification are controlled by separate statutory provisions. *See id.* § 30-3-5(8)(i)(i) (LexisNexis 2013) (controlling modification of alimony); *id.* § 78B-12-210(8)–(9) (2012) (controlling modification of child support).

the time the decree was entered, qualifies as a basis for modification.

¶13   Recent cases from this court confirm this interpretation. In *Fish v. Fish*, 2016 UT App 125, 379 P.3d 882, a husband "filed a petition seeking to terminate or reduce" alimony based upon an alleged two-dollar-an-hour increase in his wife's income. *Id.* ¶ 3. The trial court denied the petition. *Id.* The husband appealed, asserting, among other grounds, that the trial court failed "to find that an unforeseen material substantial change in circumstances warranted modification of the decree." *Id.* ¶ 4. The husband claimed that because the divorce decree was devoid of language referring to an increase in income by the receiving spouse, any increase would be a "change of circumstance not contemplated by the divorce decree itself." *Id.* ¶ 18 (internal quotation marks omitted). This court disagreed and affirmed the trial court, stating:

> We next note that the statute is concerned with whether the alleged change of circumstances was "foreseeable," not whether the alleged change of circumstances was actually foreseen and accounted for in a divorce decree. *See* Utah Code Ann. § 30-3-5(8)(i)(i). It follows that an increase of income not actually contemplated by the divorce decree does not automatically require a finding that a "substantial material change in circumstances not foreseeable at the time of the divorce" has occurred. *See id.* We are not aware of any Utah authority requiring a district court to find that such a change has occurred simply because one party's income has increased and the divorce decree did not discuss possible increases in income.

*Id.* ¶ 19. Thus, in *Fish* we expressly applied the foreseeability standard and construed the provision to encompass

circumstances beyond those actually foreseen at the time. We further noted:

> Were it otherwise, creeping inflation could necessitate recalculation of nearly all alimony awards on an annual or biennial basis. And such a rule would conflict with the considerable discretion enjoyed by the district court to determine whether a substantial and material change has occurred.

*Id.* Consequently, this court agreed with the trial court that although the receiving ex-spouse's income had increased somewhat in the intervening time between the decree and the petition to modify, that increase was foreseeable and a petition to modify alimony could not be granted. *Id.* ¶ 20.

¶14     Similarly, in *Earhart v. Earhart*, 2015 UT App 308, 365 P.3d 719, this court affirmed a trial court's finding that certain substantial material changes in circumstances were unforeseeable and therefore provided a basis for modification of alimony. *Id.* ¶¶ 11, 14. Mr. Earhart's annual income at the time the decree was entered was $264,000, but some months later, his business "suffered the unforeseen loss of its primary client," and as a result his annual income dropped to $180,000. *Id.* ¶¶ 3, 11. In its findings, the trial court noted that the evidence was essentially uncontroverted that a significant client had been lost, the financial records of the company confirmed that the revenue historically flowing from this client had evaporated, and "the change in clientele and income was unforeseeable." *Id.* ¶¶ 11, 13. This court affirmed, concluding that, even though the evidence was mixed, sufficient evidence existed to support the trial court's findings, "which in turn are adequate to support its conclusion that an unforeseen and involuntary change of circumstances had occurred." *Id.* ¶ 14.

¶15   In sum, the two most recent decisions of this court reviewing a trial court's adjudication of a petition to modify alimony applied a foreseeability standard. This approach is consistent with the plain language of the 1995 amendment and is the standard we apply today.

¶16   MacDonald relies on *Bolliger v. Bolliger*, 2000 UT App 47, 997 P.2d 903, to argue that only where the alleged change in circumstances was expressly anticipated in the decree itself is a petition to modify alimony precluded.[5] Although the court in *Bolliger* quoted an earlier version of Utah Code section 30-3-5(8)(i)(i), *see Bolliger*, 2000 UT App 47, ¶ 11, it does not appear that the court applied the foreseeability analysis that the plain language of the statute requires. Instead, *Bolliger* applied a standard for modification of alimony that requires the moving party to show that "a substantial material change of circumstances has occurred since the entry of the decree and *not contemplated in the decree itself.*" *Id.* ¶ 11 (citation and internal quotation marks omitted). This is likely because the parties in *Bolliger* did not argue that the 1995 amendment substantively changed the prior standard. In fact, the *Bolliger* court noted:

> The parties agree that this provision, added in 1995, does not alter the efficacy of our jurisprudence requiring evidence that the change was foreseen at the time of the divorce to preclude a finding of changed circumstances.

*Id.* ¶ 11 n.3. As a result, the *Bolliger* court did not address whether the 1995 amendment altered the applicable standard. As our analysis above shows, however, the standard did change and we apply that standard today.

---

5. Both parties in this case have cited *Bolliger* as controlling case law.

## II. The Foreseeability Standard Applied

¶17    Consistent with the statute's plain language, and as applied in our decisions in *Fish* and *Earhart*, we hold that the standard to be applied in determining whether a substantial change in circumstance warrants a modification of alimony is whether the circumstance was foreseeable at the time of divorce. Where the circumstances are foreseeable, or may be reasonably anticipated, modification is not permitted.

¶18    In the present matter, we cannot say that it was unforeseeable that Fahey would sell some of the real estate and invest the proceeds. A reasonable person will normally act in a prudent manner to protect his or her financial interests and security. Therefore, it is not merely foreseeable, but likely, that under the circumstances of this case, were a real property asset to be liquidated, the proceeds would not be frittered away or left to gather dust.[6] Moreover, the fact that Fahey might have future income from investments was foreseeable under the specific facts of this case. Prior to entry of the Decree MacDonald paid Fahey $200,000 in cash. As part of the stipulated Decree, MacDonald agreed to pay $103,500 over time with an initial payment amount of $4,500 per month. It would be unreasonable to expect that Fahey would necessarily either dissipate more than $300,000 in the short term or that she would otherwise not handle these funds in a financially prudent manner. The record reflects that Fahey put the $200,000, which was paid prior to the execution of the Agreement, in an investment account. It is hardly a stretch to foresee that if real property were liquidated the proceeds of that sale might be deposited in that same account for investment purposes.

---

6. Indeed, MacDonald acknowledges that Fahey was under no obligation to liquidate the Property and if she had simply held onto the Property until after the alimony obligation expires, she could have sold it with no effect on alimony.

¶19 As the trial court noted, the express terms of the Agreement, and ultimately the Decree, discussed certain obligations that would arise if and when Fahey sold the Property. This express provision leaves no doubt that the sale of the Property and its resulting proceeds, however they would be used in the future, were foreseeable.[7] As the trial court noted, the Decree expressly provided that certain expenses would be paid from the proceeds flowing from the sale of the awarded real property. On these facts, the trial court did not exceed its discretion when it concluded that MacDonald failed to show an unforeseeable substantial material change in circumstances from the time of the Decree.

CONCLUSION

¶20 The trial court's findings adequately support its conclusion that MacDonald failed to show a substantial change in circumstances that was not foreseeable at the time the Decree was entered. The trial court therefore did not exceed its discretion.

¶21 Affirmed.

——————

7. MacDonald also claims that the sales price materially differed from what he anticipated. This fact, if true, is not determinative. Although MacDonald received the offer and approved the sale *before* the Decree was entered, it is easily foreseeable that the actual sale price for real estate may differ from what parties anticipate. Moreover, there was no evidence that the parties agreed to the property distribution based on any mutual understanding of the value of the parcels involved.