**2017 UT App 174**

# THE UTAH COURT OF APPEALS

CRAIG ALAN JENSEN,
Appellee,

*v.*

TIMOTHY RUFLIN,
Appellant.

Opinion
No. 20160194-CA
Filed September 8, 2017

Third District Court, Salt Lake Department
The Honorable Paul G. Maughan
No. 154906899

James C. Lewis, Attorney for Appellant

Craig Alan Jensen, Appellee Pro Se

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and JILL M. POHLMAN concurred.[1]

ORME, Judge:

¶1     Timothy Ruflin appeals the district court's decision overruling his objection to a protective order entered against him. We agree with the district court that the protective order was not barred by either the doctrine of res judicata or the Cohabitant Abuse Act's limitations on mutual protective orders. Further, we conclude that the court acted within its discretion when denying Ruflin's request to continue the hearing on his objection. Accordingly, we affirm.

---

1. Judge J. Frederic Voros Jr. participated in this case as a member of the Utah Court of Appeals. He retired from the court before this decision issued.

BACKGROUND

¶2    On October 21, 2015, Ruflin spotted his brother-in-law, Craig Alan Jensen, and resolved to pick a fight. On that day Ruflin's mother's house was being reroofed, and Ruflin sat with her on her porch while they waited for the work to be completed. As they sat, they noticed that not far down the road a white truck was approaching "very slowly." Both immediately recognized that the truck belonged to Jensen. As Jensen often would, he acknowledged his mother- and brother-in-law by tapping his horn as he passed by. His mother-in-law waved back. Ruflin offered a less cordial gesture.

¶3    Jensen had not made it more than a "house or house and a half up the street" before he slammed on his brakes, sped backward, and came to a stop in front of the porch. He got out of his truck and an altercation ensued. It is unclear who threw the first punch. In its oral findings, the district court would later refer to the incident as a "mutual confrontation." Likewise, the reasons for the brothers-in-laws' mutual hostility are rather murky. What is clear, however, is that Jensen emerged from the fight with a stab wound.

¶4    Not long after the incident, Ruflin petitioned the district court for a protective order against Jensen. The court set the matter for hearing on November 30, 2015, before Commissioner Blomquist. After hearing from both parties, Commissioner Blomquist issued a protective order directing that Jensen was not to "commit or threaten to commit any form of violence against" Ruflin, that he was not to "contact . . . or communicate" with Ruflin "in any way," and that he was to "[s]tay away from" the homes of both Ruflin and Ruflin's mother. Contrary to Ruflin's repeated representations in his opening brief, however, Commissioner Blomquist's order was far from the first protective order issued in this case.

¶5    In fact, by the time Ruflin obtained his protective order against Jensen, Jensen had already obtained three separate protective orders against Ruflin, albeit temporary ones.[2] Jensen filed an initial petition for a protective order against Ruflin the day after the incident, and the district court scheduled a hearing before Commissioner Casey on November 5, 2015. On the day Jensen's petition was filed, the court entered a temporary protective order against Ruflin that was scheduled to expire automatically on the petition's hearing date. Ruflin did not appear at that hearing. The court therefore scheduled a second hearing two weeks later and entered a second temporary protective order, which, like the first, was scheduled to expire on the date of the hearing. Once again, Ruflin did not appear. The court then scheduled a third hearing and issued a third temporary order, and Ruflin finally appeared before Commissioner Casey on December 3, 2015.

¶6    At this third hearing, after receiving "argument and evidence," Commissioner Casey concluded that a permanent protective order should indeed issue against Ruflin. The terms of Commissioner Casey's protective order (the Order) largely mirrored those of Commissioner Blomquist's order against Jensen.

¶7    On December 17, 2015, Ruflin filed a "partial objection" (the Objection) to the Order in the district court pursuant to

---

2. The first two of these temporary orders were not served on Ruflin. There is some suggestion in the record, however, that he was avoiding service, despite the fact that he was, of course, not entitled to do so. *See generally C504750P LLC v. Baker*, 2017 UT App 36, ¶ 4 n.1, 397 P.3d 599 ("A litigant is not privileged to avoid lawful process."). In any event, it appears that Ruflin became much easier for Jensen's process server to locate once Ruflin had obtained his own protective order against Jensen.

section 78B-7-107 of the Cohabitant Abuse Act.[3] *See* Utah Code Ann. § 78B-7-107(1)(f) (LexisNexis 2012). While the Objection was untimely under that section, which provides that objections must be filed "within 10 days of the entry of the [commissioner's] recommended order," *id.*, the district court did not dismiss it on that basis. Ruflin thereafter filed two separate amendments to the Objection—one on December 22, 2015, and another on January 6, 2016. Finally, on January 25, 2016, he requested that the matter be submitted for decision. The court scheduled an evidentiary hearing on the Objection for February 16, 2016 (the Objection Hearing).

¶8    With a little more than a week to go before the Objection Hearing, Ruflin secured new legal counsel, and new counsel entered an appearance on February 8, 2016. That attorney withdrew from the case the very next day, however, and another attorney, Ruflin's current counsel, immediately entered an appearance on his behalf. By then, the Objection Hearing was only six days away.

¶9    After entering his initial appearance, Ruflin's new attorney filed a motion to continue the Objection Hearing. In the motion, counsel argued that a continuance was proper because he was new to the case and had not been given adequate time to prepare, that there were "[e]yewitnesses to the attack . . . [who] must be located and subpoenaed," and that in any event Jensen could not establish that he would be prejudiced by the continuance. Counsel added that he had only just returned from a "scheduled vacation in St. George." Finally, counsel informed

---

3. Although Ruflin and Jensen do not reside together, they are nevertheless "cohabitants" for purposes of Utah's Cohabitant Abuse Act. *See* Utah Code Ann. § 78B-7-102(2)(c) (LexisNexis Supp. 2016) (defining "cohabitant" as "a person who is 16 years of age or older who . . . is related by blood or marriage to the other party").

the court that he had contacted Jensen about the matter, but Jensen had refused to stipulate to the continuance.

¶10 At the Objection Hearing, the district court denied Ruflin's motion for a continuance and found that the evidence supported Commissioner Casey's decision to enter the Order. The court began its oral findings and conclusions by addressing the continuance motion. The court determined that Ruflin's motion should be denied because the Cohabitant Abuse Act imposes an expedited schedule on protective order petitions and that, notwithstanding his late arrival to the case, Ruflin's counsel had been able to secure the attendance and testimony of Ruflin and his mother at the Objection Hearing. The court then proceeded to reject Ruflin's argument that the Order was barred by the doctrine of res judicata under our decision in *Peterson v. Armstrong*, 2014 UT App 247, 337 P.3d 1058. Finally, the court found that Ruflin had initiated the October 21 confrontation, that he had "continued to provoke and extend" it after Jensen parked his truck, and that he had stabbed Jensen with a knife.

¶11 The next day, the district court entered a minute order stating that it had "entered its oral findings on the record pursuant to [Utah Rule of Civil Procedure] 52(a) and determined that [Jensen] had met his burden of establishing that he was entitled to a Protective Order." Accordingly, the court overruled the Objection and stated that the Order "will remain in full force and effect." Ruflin appeals.

ISSUES AND STANDARDS OF REVIEW

¶12 Ruflin ascribes three errors to the district court's decision overruling the Objection. First, Ruflin contends that because Commissioner Blomquist entered a protective order against Jensen before Commissioner Casey entered the Order against Ruflin, the district court should have concluded that the Order was barred under the doctrine of res judicata. "Whether a claim

is barred by res judicata is a question of law that we review for correctness." *Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 9, 284 P.3d 622. Second, Ruflin maintains that even if the Order was not barred by res judicata, the district court nevertheless committed error by failing to adhere to the Cohabitant Abuse Act's limitations on mutual protective orders. "[A] district court's interpretation of a statutory provision is a question of law that we review for correctness." *State ex rel. Div. of Forestry, Fire & State Lands v. Tooele County*, 2002 UT 8, ¶ 8, 44 P.3d 680. Finally, Ruflin argues that the district court erred when it denied his request to continue the Objection Hearing. "The trial court has substantial discretion in deciding whether to grant continuances and will not be reversed on appeal unless it has abused that discretion by acting unreasonably." *Hill v. Dickerson*, 839 P.2d 309, 311 (Utah Ct. App. 1992) (citation omitted).

## ANALYSIS

¶13 We address each of Ruflin's three arguments in turn, beginning with the argument that the Order was barred by the doctrine of res judicata.

## I. Res Judicata

¶14 Ruflin contends that this case is factually indistinguishable from *Peterson v. Armstrong*, 2014 UT App 247, 337 P.3d 1058. There, we held that res judicata barred a petitioner from filing a second petition for a civil stalking injunction where the two petitions alleged identical facts and the first petition had already been dismissed on the merits. *Id.* ¶¶ 15–16. We conclude, as the district court did, that *Peterson* has no application in this case.

¶15 "'The doctrine of res judicata embraces two distinct branches: claim preclusion and issue preclusion.'" *State v. Sommerville*, 2013 UT App 40, ¶ 30, 297 P.3d 665 (quoting *Mack v.*

*Department of Commerce*, 2009 UT 47, ¶ 29, 221 P.3d 194). As Ruflin invokes only claim preclusion in this appeal, we take no position on whether issue preclusion would bar a protective order under the instant circumstances.

¶16 Claim preclusion "'bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously.'" *Id.* (quoting *In re D.A.*, 2009 UT 83, ¶ 33, 222 P.3d 1172). Before a litigant will be entitled to invoke claim preclusion, three elements must be satisfied:

> (1) both suits must involve the same parties or their privies, (2) the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action, and (3) the first suit must have resulted in a final judgment on the merits.

*Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 21, 285 P.3d 1157 (citations and internal quotation marks omitted). While Ruflin correctly observes that the parties before Commissioners Casey and Blomquist were the same, he fails to address in his brief whether the second element of claim preclusion has been satisfied under these facts. We conclude that it has not.

¶17 Jensen's petition for a protective order against Ruflin was not barred by claim preclusion because the Cohabitant Abuse Act does not contemplate counter-petitions for protective orders,[4] and thus it is far from clear that Jensen could have—much less should or must have—sought his protective order in the proceeding initiated by Ruflin. Therefore, because Jensen's

_____

4. Indeed, as explained hereafter, even when parties seek mutual protective orders, the Act requires parties to file independent petitions, as the parties did here.

petition was not a "claim that . . . must have been presented in the first suit or . . . one that could and should have been raised in the first action," the district court correctly rejected Ruflin's res judicata argument. *See id.* (citation and internal quotation marks omitted).

¶18   Moreover, the difference between this case and the factual scenario in *Peterson* is plain. In *Peterson*, the petitioner's two petitions for civil stalking injunctions did not only name the same parties; each also named the same petitioner *and* respondent. *See Peterson*, 2014 UT App 247, ¶¶ 5–6. Thus, because the second petition alleged all the same facts as the first and requested the very same remedy, there was no genuine question as to whether the claim the petitioner brought in the second action had already been raised against the respondent in the first petition. In contrast, the proceedings before Commissioners Blomquist and Casey involved different petitioners, each with his own claim to assert against the other party.

## II. Mutual Protective Orders

¶19   We now turn to Ruflin's second argument, namely that the district court erred by failing to conclude that the Order violated the Cohabitant Abuse Act's limitations on mutual protective orders. Section 78B-7-108 of the Utah Code provides:

> (1) A court may not grant a mutual protective order or mutual protective orders for protection to opposing parties, unless each party:
>
>> (a) has filed an independent petition against the other for a protective order, and both petitions have been served;
>>
>> (b) makes a showing at a due process protective order hearing of abuse or

> > domestic violence committed by the other party; and
>
> > (c) demonstrates the abuse or domestic violence did not occur in self-defense.
>
> (2) If the court issues mutual protective orders, the circumstances justifying those orders shall be documented in the case file.

Utah Code Ann. § 78B-7-108 (LexisNexis 2012). Ruflin concedes that he cannot reasonably challenge the district court's decision under subsections (1)(a) or (1)(b), as both parties filed independent petitions and each proved, at a separate hearing, that the other party had committed abuse. Nevertheless, Ruflin maintains that because there was already a valid protective order in effect between the parties at the time Commissioner Casey entered the Order against Ruflin, subsections (1)(c) and (2) needed to be complied with, and neither Commissioner Casey nor the district court made sufficient findings in that regard.

¶20    Ruflin's contention is without merit. To begin with, the district court found that Ruflin's abuse of Jensen was not an act of self-defense. While the court concluded that there was insufficient evidence to determine who threw the first punch during the October 21 incident, it nevertheless found that Ruflin not only initiated the confrontation by giving Jensen "the finger," but also "continued to provoke and extend" the confrontation by affirmative, aggressive action. Furthermore, Ruflin's assertion that the court "fail[ed] to 'document' the circumstances justifying [a protective order that] competes with a prior protective order" is simply incorrect. The court expressly opined that affirming the Order would "rightfully" "result in protective orders against each [party]" because the evidence showed that the physical altercation on October 21, 2015, was a "mutual confrontation," the fault for which could not be pinned wholly on either party. Accordingly, we agree with the district

court that the Order complied with the Cohabitant Abuse Act's limitations on mutual protective orders.

### III. Continuance

¶21  Ruflin maintains that the district court's decision should be reversed because the court abused its discretion by declining to grant his request to continue the Objection Hearing. His reasoning is somewhat extraordinary under the circumstances.

¶22  Observing that the Cohabitant Abuse Act provides that a hearing on a party's objection to a commissioner's protective order "shall" be held "within 20 days of the filing of the objection," *see* Utah Code Ann. § 78B-7-107(1)(f), Ruflin directs our attention to the fact that he initially filed the Objection on December 17, 2015, yet the Court did not hold a hearing on the Objection until February 16, 2016. Thus, he argues, "the reality is that the statutory requirements for a hearing within twenty . . . days were simply not met by the Court," and "[t]his failure by the Court to meet the statutory requirements . . . constituted a waiver." Put more succinctly, his argument is this: it was an abuse of discretion to deny him a continuance because, in refusing to delay a hearing that had already been calendared outside the statute's prescribed timeline, the court was "invoking the statutory requirement that [it] had not . . . met."

¶23  A district court is endowed with "inherent power to manage its docket," and we accordingly review its decisions in this arena only for "abuse of discretion." *See Clayton v. Ford Motor Co.*, 2009 UT App 154, ¶ 9, 214 P.3d 865. Given the procedural history of this case, we have no trouble concluding that the district court did not abuse its discretion in this instance.

¶24  Of particular importance, the Objection Hearing's untimeliness is largely the result of Ruflin's own conduct. For instance, having filed two separate amendments to his initial Objection, which was itself filed a few days beyond the limit

prescribed by statute, Ruflin did not get around to requesting submission of his Objection for decision until January 25, 2016. *See* Utah R. Civ. P. 7(g) ("[I]f no party files a request, the motion will not be submitted for decision."). Further, if Ruflin had insufficient time to develop the proof supporting the Objection, he bears much of the responsibility, given his decision to change his legal representation only days before the Objection Hearing. In view of the broad discretion accorded to the district court, we reject Ruflin's contention that the court abused its discretion by denying his request for a continuance.

CONCLUSION

¶25   The district court correctly determined that res judicata did not bar the Order, that the Order did not run afoul of the Cohabitant Abuse Act's limitations on mutual protective orders, and that the court acted within its discretion when it declined to continue the Objection Hearing. We therefore uphold the court's decision affirming the protective order entered against Ruflin.

———————