2018 UT App 121

## THE UTAH COURT OF APPEALS

IN THE MATTER OF THE J. MELVIN AND GLENNA D. BULLOCH
LIVING TRUST

KIM MURIE AND BRENT MURIE,
Appellants,
*v.*
GLENNA D. BULLOCH,
Appellee.

Opinion
No. 20160782-CA
Filed June 21, 2018

Fifth District Court, Cedar City Department
The Honorable Keith C. Barnes
No. 143500053

Carson M. Pearson, Daniel E. Witte, and Elliot P.
Smith, Attorneys for Appellants

J. David Westwood and Scott M. Burns, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES KATE A. TOOMEY and RYAN M. HARRIS concurred.

POHLMAN, Judge:

¶1     In this case, we consider whether the district court, in the context of deciding a motion for summary judgment, correctly ruled that an amendment to the J. Melvin and Glenna D. Bulloch Living Trust (the Trust) was void as a matter of law. We also consider whether the court exceeded its discretion in entering final judgment before resolving other issues relating to the administration of the Trust. We affirm.

BACKGROUND

¶2    J. Melvin Bulloch and Glenna D. Bulloch[1] established the Trust in May 1996. They were each designated as Grantors and also as Trustees of the Trust. Among its provisions, and as relevant here, the Trust provided, "So long as both Grantors are living, they reserve the right to revoke, alter or amend this Trust instrument in whole or in part by a written instrument signed, acknowledged and delivered to the Trustees. Such election must be made by both Grantors."

¶3    In August 1998, Melvin appointed Glenna as his attorney-in-fact through a written "General Power of Attorney" (the Power of Attorney). The Power of Attorney defined the scope of Glenna's authority, stating that Glenna was appointed to act for Melvin as follows:

> In my name, place and stead, to do any act or transaction which I would do myself, if I were personally present, with respect to all matters to the fullest extent that I as an individual am permitted by law to perform by and through an agent (including what I may do as Trustee of The J. Melvin and Glenna D. Bulloch Living Trust . . . ).

The Power of Attorney then provided a non-exclusive listing of powers delegated to Glenna as attorney-in-fact:

> To conduct banking transactions; to receive, endorse and cash any checks payable to me, from whatever source, to deposit such funds in any bank or invest such funds or expend such funds for my

_____

1. Because J. Melvin Bulloch and Glenna Bulloch share the same last name, we refer to them as Melvin and Glenna, with no disrespect intended by the apparent informality.

maintenance and support, whether directly or indirectly, and to have control over any funds deposited in my name, personally or in my name as Trustee . . . and to have access to any safe deposit box held in my name. To conduct real estate transactions, including the power to sell, rent or lease any rights I may own in real estate, and to receive and receipt any and all rents, royalties, and all payments now due or to become due to me as I would be able to do myself (including what I may do as Trustee . . .); to sign tax returns and receive and cash tax refund checks; to make gifts in my name and to take steps to perpetuate and carry out my estate plan and financial plans; and to do any and all other things necessary and proper in the conduct of my personal, business, banking and Trust affairs.

¶4 Many years later, on April 2, 2013, Glenna signed the Second Amendment to the Trust (the Second Amendment). It purported to amend the Trust by, among other things, altering the property distribution such that two particular parcels of property held in the Trust for the benefit of all the beneficiaries would be conveyed to Kim Murie, the Bullochs' daughter. Glenna signed the Second Amendment in her individual capacity and in her capacity as Melvin's attorney-in-fact. Melvin did not sign the Second Amendment. He died two days later.

¶5 In June 2014, Glenna filed a petition for declaratory judgment, claiming that she "did not understand the Second Amendment when she signed it" and requesting a court order declaring it void "so as to resolve any disputes over her estate." She argued that the Second Amendment should be declared void pursuant to Utah Code section 75-5-503(1), which prohibited an attorney-in-fact from modifying an inter vivos revocable trust unless such power was "expressly authorized in the power of attorney." Utah Code Ann. § 75-5-503(1)

(LexisNexis Supp. 2014).[2] She claimed that the Second Amendment was void on the basis that there was "no language in the Power of Attorney that expressly authorizes the agent to modify the Trust."

¶6      In March 2016, Glenna moved for summary judgment in which she repeated the section 75-5-503 statutory argument she made in the petition. Relatedly, Glenna also contended that the broad language in the Power of Attorney giving her authority "to do any and all other things necessary and proper in the conduct of [Melvin's] . . . Trust affairs" could not be construed to authorize her to amend the Trust. And she asserted that while the language in the Power of Attorney referenced her authority to act in Melvin's stead as a Trustee, the Trust "makes it clear that only the grantors of the Trust are allowed to amend the Trust, not the trustees."

¶7      Murie responded, arguing that Glenna had authority to amend the trust on Melvin's behalf through the Power of Attorney. She argued that the "general power of attorney . . . has no restrictions" on the power afforded Glenna and that its broad language was sufficient to bestow her with amendment power.

¶8      On June 8, 2016, the district court issued a memorandum decision granting Glenna's summary judgment motion and concluding that the Second Amendment was void as a matter of law. Relying on *Kline v. Utah Department of Health*, 776 P.2d 57 (Utah Ct. App. 1989), the court noted that courts "must strictly

---

2. Utah Code section 75-5-503 was repealed and replaced effective May 10, 2016, during the proceedings in this case. *See* Utah Code Ann. § 75-5-503 (LexisNexis Supp. 2016); *id.* § 75-9-201 (Supp. 2017). The district court continued to apply the 2014 version of the statute to resolve the case, and though both parties note the repeal and replacement, neither argues that the district court erred in applying section 75-5-503. We therefore follow suit and apply section 75-5-503.

construe the language in the power of attorney." And referencing the requirements of section 75-5-503, it determined that "[t]here is no language in [the Power of Attorney] expressly authorizing [Melvin's] agent to amend the Trust." The court noted that "each specific reference to the Trust" in the Power of Attorney "expressly limits the agent to Melvin's rights 'as Trustee' of the Trust," and that the Trust makes clear that only the Grantors could amend the Trust. Further, the court determined that because the language in the Power of Attorney must be strictly construed, its broad language "cannot be construed to grant [Melvin's] agent power to amend his Trust" as required by section 75-5-503. Rather, because the Power of Attorney "did not specifically authorize his agent to act as Grantor of or otherwise modify the Trust," Glenna's signature on the Second Amendment as Grantor on Melvin's behalf "exceeded the Power of Attorney." The court directed Glenna to prepare an order consistent with the decision.

¶9     On June 15, 2016, before Glenna filed her proposed order, Murie and her husband Brent Murie[3] filed a motion captioned "Motion in Support of Petition or Amended and Supplementary Answer and Cross-Petition and for Related Supplementary Discovery and Supplementary Proceedings" (the Motion). The Muries contended that, during the June 8 summary judgment hearing, offhand comments made by Glenna's attorney hinted at certain Trust administration issues of which the Muries had not been previously aware, and they asserted that upon further inquiry "it became clear . . . that [Murie] was being denied proper disclosure, input, involvement, valuation, accounting, partition, and other arrangements consonant with fair and equitable treatment" in relation to the Trust.

---

3. All references herein to Murie are to Kim Murie individually. When referring to both Kim and Brent Murie we refer to them collectively as "the Muries."

¶10    The Muries argued in their motion that even if the Second Amendment is judged void, the other Trust administration issues would need to be resolved. They therefore asked the district court to allow their petition to go forward, invoking rule 15(a) of the Utah Rules of Civil Procedure for leave to amend, rule 15(d) for leave to file supplementary pleadings, and rule 20(a) for leave to join additional parties to the proceeding. They concurrently filed a proposed "Verified Petition (or Amended and Supplementary Answer and Cross-Petition) for An Accounting, Declaratory Judgment, Valuation, Partition, and Other Relief" (the Proposed Verified Petition).

¶11    Glenna did not file a memorandum in opposition, and the Muries never submitted the motion to the court for decision. Glenna subsequently filed her proposed order, which memorialized the district court's summary judgment decision in her favor and stated that the judgment was final. Murie filed an objection to it on the same day (the Objection). In the Objection, Murie referred to the Motion, the Proposed Verified Petition, and the "numerous other as-yet unresolved issues" she identified in them, and she informed the district court that she did "not believe that [the court] intended to render a final judgment and dismiss the entire litigation." Instead, she stated that she believed the court "intended to take the normal approach of deciding all petitions, issues, and disputes that may arise in relation to a trust estate, and then rendering one final integrated judgment." She thus asked the court to grant only partial summary judgment, rendering judgment that the Second Amendment was void as the court had ruled, but not issuing a "final and appealable judgment . . . until a comprehensive resolution is reached or adjudicated as to all controversies, matters, petitions, and parties in relation to" the Trust.

¶12    The district court signed Glenna's proposed order and overruled the Objection. In so doing, the court declined to entertain, as part of this lawsuit, the Motion and the Proposed Verified Petition. The court concluded that it was inappropriate to keep the matter open to resolve the various Trust

administration issues Murie identified. It noted that the "sole issue" in the proceeding was "whether or not the Second Amendment to the Trust was valid," and that it had already entered a ruling that it was not. In this regard, the court stated that it would "not be prudent to allow [Murie] to extend this declaratory judgment matter into a long [protracted] estate matter when [Glenna] filed a petition seeking specific declaratory relief on one issue." The court also noted that Murie retained the "ability to seek relief from the Court in a separate matter" under Utah Code section 75-7-201(2)(b) regarding any Trust administration issues she believed required court supervision.

¶13    The Muries appeal.[4]


ISSUES AND STANDARDS OF REVIEW

¶14    Murie argues that the district court's summary judgment ruling was erroneous. In particular, she argues that the court erred in ruling that the Second Amendment was void as a matter of law. "The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of

---

4. Murie alone answered the declaratory judgment action and responded to Glenna's motion for summary judgment in her capacity as a beneficiary of the Trust. Accordingly, Brent Murie is not a party to the appeal of the court's rulings related to that order. *See generally Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 9, 293 P.3d 241 (observing that "persons or entities that are not parties to a proceeding are not entitled to an appeal as of right"). His participation in this appeal is limited to the district court's alleged failure to properly consider the motion to file the Muries' Proposed Verified Petition, which included a request to allow Brent Murie to join as co-petitioner with Murie.

law." Utah R. Civ. P. 56(a). "We review the trial court's grant of summary judgment for correctness, considering only whether the trial court correctly applied the law and correctly concluded that no disputed issues of material fact existed." *In re Evan O. Koller Revocable Living Trust*, 2018 UT App 26, ¶ 8, 414 P.3d 1099 (quotation simplified).

¶15 She also argues that the district court erred by entering judgment in the case without addressing the "other unresolved existing controversies . . . related to the Trust" that she identified in the Motion and the Proposed Verified Petition and referred to in the Objection. Relatedly, the Muries argue that the court erred by denying them leave to file the Proposed Verified Petition or amended and supplementary pleadings. We generally review these types of decisions for abuse of discretion. *See Stichting Mayflower Mountain Fonds v. United Park City Mines Co.*, 2017 UT 42, ¶¶ 46–52 (motions to amend); *Green v. Louder*, 2001 UT 62, ¶ 40, 29 P.3d 638 (motions to join a party); *Jensen v. Ruflin*, 2017 UT App 174, ¶ 23, 405 P.3d 836 (requests to grant a continuance).

ANALYSIS

I. The Second Amendment to the Trust

¶16 Murie argues that the district erred in concluding that the Second Amendment was void as a matter of law. She contends that the court erred in applying Utah Code section 75-5-503 when it determined that the Power of Attorney did not expressly authorize Glenna to amend the Trust on Melvin's behalf. In particular, she contends that the Power of Attorney "expressly contemplated the kind of act in which [Glenna] engaged when she signed the Second Amendment," and that the broad and plain language of the Power of Attorney bestowed on her the authority to modify the Trust. She also asserts that in interpreting the Power of Attorney, the district court improperly "attempted to graft a limiting distinction between Trust 'Grantor' authority and 'Trustee' authority."

¶17 Murie's argument requires us to interpret and apply the relevant statute, section 75-5-503, to the Power of Attorney. When we interpret statutes, we seek to discern and give effect to the legislature's intent. *MacDonald v. MacDonald*, 2017 UT App 136, ¶ 10, 402 P.3d 178, *cert. granted*, 409 P.3d 1046 (Utah 2017). "The best evidence of the legislature's intent is the plain language of the statute itself." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (quotation simplified). Therefore, we "assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning." *Id.* (quotation simplified). "In looking to determine the ordinary meaning of nontechnical terms of a statute, our starting point is the dictionary." *MacDonald*, 2017 UT App 136, ¶ 10 (quotation simplified). "When we can ascertain the intent of the legislature from the statutory terms alone," as is the case here, "no other interpretive tools are needed, and our task of statutory construction is typically at an end." *Id.* (quotation simplified).

¶18 Applying these principles, we agree with the district court that, under section 75-5-503 and the Power of Attorney, the Second Amendment was void as a matter of law. Section 75-5-503 is a codification of the common law rules limiting an agent's powers in relationship to a trust to the actions expressly authorized in the power of attorney. *See Fields v. CUNA Mutual Ins. Society, Inc.*, No. 2:05-cv-01027-BSJ, 2011 WL 3319441, at *3 (D. Utah Aug. 1, 2011). It provides that "[a] power of attorney may not be construed to grant authority to an attorney-in-fact or agent to perform any of the following, unless expressly authorized in the power of attorney: (1) create, modify, or revoke an inter vivos revocable trust created by the principal." Utah Code Ann. § 75-5-503(1) (LexisNexis Supp. 2014).[5] The plain

---

5. Section 75-5-503 also includes in its list of actions that required express authorization: "fund, with the principal's property, a trust not created by the principal or by a person authorized to create a trust on behalf of the principal"; "make or revoke a gift

(continued…)

terms of this statute indicate a clear intent that an attorney-in-fact may not "create, modify, or revoke" a relevant trust unless that authorization is directly and explicitly stated in the written power of attorney. *See id*. *See generally Express*, Black's Law Dictionary (10th ed. 2014) ("Clearly and unmistakably communicated; stated with directness and clarity."); *Express*, Merriam-Webster.com, https://www.merriam-webster.com /dictionary/express [https://perma.cc/YCL4-GFRQ] ("directly, firmly, and explicitly stated").

¶19 The Second Amendment expressly purported to change terms of the Trust by deleting, replacing, and adding new paragraphs to the Trust. It was therefore clearly a modification of the Trust. *See Modify*, Black's Law Dictionary (10th ed. 2014) ("To make somewhat different; to make small changes to (something) by way of improvement, suitability, or effectiveness . . . ."); *Modify*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/modify [https://perma.cc/G5UA-67DF] ("to make minor changes in" or "to make basic or fundamental changes in often to give a new orientation to or to serve a new end"). Thus, section 75-5-503 plainly required that any authority to modify the Trust be expressly included in the Power of Attorney. *See* Utah Code Ann. § 75-5-503(1). It was not. There is no language in the Power of Attorney directly and explicitly conferring upon Glenna as attorney-in-fact the power to modify the Trust on Melvin's behalf.[6]

---

(…continued)
of the principal's property, in trust or otherwise"; and "designate or change the designation of beneficiaries to receive any property, benefit, or contract right on the principal's death." Utah Code Ann. § 75-5-503(2)–(4) (Supp. 2014).

6. The case on which Murie relies to support her interpretation of the Power of Attorney, *Eagar v. Burrows*, 2008 UT 42, 191 P.3d 9, only bolsters our conclusion that Melvin did not confer upon

(continued…)

¶20    Nevertheless, Murie suggests that we may infer authority to modify the Trust from the broad, general grants of authority included in the Power of Attorney. We reject this suggestion. Our courts have repeatedly stated that powers of attorney are to be strictly construed. *See Kline v. Utah Dep't of Health*, 776 P.2d 57, 61 (Utah Ct. App. 1989) (stating that the scope of authority conferred by a power of attorney "may, by the terms of the instrument itself, be general or limited, but the instrument creating this agency relationship is to be strictly construed"); *see also Eagar v. Burrows*, 2008 UT 42, ¶ 19, 191 P.3d 9 (citing *Kline*, 776 P.2d at 61); *Franklin Credit Mgmt. Corp. v. Hanney*, 2011 UT App 213, ¶ 21, 262 P.3d 406 (same). This means that while the power of attorney itself is to be construed "as a whole in order to ascertain the parties' intentions and rights," the scope of authority provided in the power of attorney is construed "so as to exclude the exercise of any power that is not warranted either by the actual terms used, or as a necessary means of executing the authority with effect." *In re Estate of Miller*, 446 S.W.3d 445, 455 (Tex. Ct. App. 2014); *see also id.* ("Under these rules of construction, powers of attorney . . . are to be strictly construed, and authority delegated is limited to the meaning of the terms in which it is expressed."); 3 Am. Jur. 2d *Agency* § 27 (2013) (explaining that in powers of attorney "the meaning of general

---

(…continued)

Glenna the authority to modify the Trust on his behalf. In *Eagar*, the Utah Supreme Court considered, among other things, whether the agent had power to gift the principal's personal property under the relevant power of attorney. *Id.* ¶¶ 16–21. The court concluded that because the power of attorney explicitly granted the agent the power to gift the principal's personal property, the agent's actions in gifting the principal's personal property was allowed. *Id.* In contrast, here, there is no explicit grant of authority to allow Glenna to modify the Trust on Melvin's behalf. Thus, under *Eagar*'s relevant holding, Murie's argument fails.

words . . . is restricted by the context and construed accordingly" and that "the authority given is construed strictly so as to exclude the exercise of any power that is not warranted either by the terms actually used or as a necessary means of executing with effect the authority given").

¶21    Here, the Power of Attorney includes several broad grants of authority, such as conferring upon Glenna the authority to act "with respect to all matters to the fullest extent that [Melvin] as an individual [is] permitted by law to perform by and through an agent (including what [he] may do as Trustee of [the Trust])," and "to do any and all other things necessary and proper in the conduct of [his] personal, business, banking and Trust affairs." But those general, broad grants are informed and bounded by the specific grants of power and, as we have explained, there is no specific grant addressing Melvin's authority to modify the Trust. *See* 2A C.J.S. *Agency* § 130 (2003) ("General expressions, however broad, are construed as limited to acts of the kind indicated by the appointment, and not extended to support an inference of an unusual agency or authority which is inconsistent with that limitation."); Restatement (Second) of Agency § 34 cmt. h (Am. Law Inst. 1958) (explaining that, in construing powers of attorney, "[a]ll-embracing expressions are discounted or discarded" and "[t]hus, phrases like 'as sufficiently in all respects as we ourselves could do personally in the premises'. . . are disregarded as meaningless verbiage"). Indeed, the specific powers identified in the Power of Attorney by-and-large deal with actions related to funds, such as depositing or investing funds, and other like-actions, including those related to real estate transactions, taxes, and making gifts. Further, the only category of authority mentioned with particularity vis-à-vis the Trust itself and Glenna's authority is Melvin's authority as a Trustee. And, as the district court aptly observed, the Trust explicitly provided that only the Grantors, not the Trustees, had power to modify the Trust.

¶22    In sum, because the Power of Attorney did not include an express authorization to Glenna to modify the Trust, and

because we decline to infer that authorization from the Power of Attorney's broad, general language, the district court correctly concluded that the Second Amendment was void as a matter of law under section 75-5-503.[7]

## II. The Motion, the Proposed Verified Petition, and the Objection

¶23    The Muries also argue that the court erred and exceeded its discretion in declining to reach the other Trust-related issues identified in the Motion and the Proposed Verified Petition and referred to in the Objection. We disagree and affirm the district court's decision.

¶24    The Muries filed the Motion and the Proposed Verified Petition on June 15, 2016, a week after the court granted Glenna's motion for summary judgment. The Muries argued that the court should grant leave to allow their petition to proceed or leave to amend Murie's answer under rule 15(a) and file supplementary pleadings under rule 15(d), as well as leave for parties to be joined under rule 20(a). Glenna did not file a responsive memorandum, and neither Glenna nor the Muries thereafter filed a request that the motion be submitted for decision. The Motion and the Proposed Verified Petition were therefore not properly before the court. *See* Utah R. Civ. P. 7(g) ("When briefing is complete or the time for briefing has expired, either party may file a 'Request to Submit for Decision,' but, if no party files a request, the motion will not be submitted for decision."); *see also Golding v. Ashley Central Irrigation Co.*, 902 P.2d 142, 148 (Utah 1995) (stating that "[b]ecause no notice [to submit the matter for decision] was ever filed, Golding's motion

---

7. To the extent Murie suggests that we ought to conclude, even if the Second Amendment is void, that the Trust nonetheless has some obligation to repay her for services she conferred to it, we have no authority to do so here. Issues regarding any obligation of the Trust to Murie were not litigated in the district court, and as a result, it is improper for us to decide them on appeal.

for leave to file a second amended complaint, with its new claim under the rescue doctrine, was never properly before the district court," and concluding that the district court therefore "did not err by not addressing" the claim). As a result, we cannot fault the court for not granting the Muries leave to file the Proposed Verified Petition, amend pleadings, or join new parties.

¶25     Moreover, we cannot discern an abuse of discretion in the district court's overruling of Murie's Objection to Glenna's proposed order, in which Murie argued that the numerous issues identified in the Motion and the Proposed Verified Petition made final judgment inappropriate. A district court is endowed with discretion in exercising its "inherent power to manage its docket." *See Jensen v. Ruflin*, 2017 UT App 174, ¶ 23, 405 P.3d 836 (quotation simplified). When Murie filed the Objection, discovery had been completed, the deadline for dispositive motions had passed, and the district court had resolved the only issue before it: whether the Second Amendment was void. The case was effectively over. Given that posture, the court was well within its discretion to reject Murie's suggestion (made in an objection to the form of an order, no less) that the court should wait to enter final judgment until issues not yet before the court had been resolved. *See id.* And apart from arguing that it would be more prudent to generally decide issues involving the same Trust in the same proceeding and conclusively asserting that the district court's refusal to address those issues had created "an intolerable and unmanageable Kafkaesque mess," Murie has directed us to no authority suggesting that the district court nonetheless abused its discretion.[8]

---

8. Without rendering an opinion regarding the viability or substance of Murie's Trust administration claims, like the district court, we note that Murie is not without an avenue to pursue them. She may, if she chooses, invoke the jurisdiction of a competent court to pursue those claims if she believes a court's

(continued…)

¶26   Accordingly, we affirm the district court's decision to decline to prolong the litigation to address the Trust administration issues Murie referred to in the Objection.


CONCLUSION

¶27   We affirm the district court's summary judgment order. The court correctly concluded that the Second Amendment was void as a matter of law under Utah Code section 75-5-503.

¶28   We also affirm the district court's decision to enter final judgment rather than prolong the litigation to allow Murie to pursue issues relating to the administration of the Trust that were not properly before the court.

───────────

(…continued)

supervision is necessary. *See* Utah Code Ann. § 75-7-201(2)(b) (LexisNexis Supp. 2017) (providing that "aspects of the administration of a trust shall proceed expeditiously consistent with the terms of the trust, free of judicial intervention and without order, approval or other action of any court, subject to the jurisdiction of the court as invoked by interested parties or as otherwise exercised as provided by law").