Janet Sue JOHNSON, Plaintiff
and Appellee,

v.

Val Budge JOHNSON, Defendant
and Appellant.

No. 910179–CA.

Court of Appeals of Utah.

June 4, 1993.

C. Gerald Parker, Ogden, for defendant
and appellant.

Stephen W. Farr, Ogden, for plaintiff
and appellee.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

BENCH, Judge:

Val Johnson appeals from an order of the trial court granting his ex-wife, Janet Johnson, alimony that is nonterminable, even upon her remarriage. He also challenges the alimony award in view of Mrs. Johnson's eligibility to receive substantial retirement benefits in the future. We vacate the alimony award and remand.

## FACTS

A decree of divorce between the parties was entered in 1987. The decree provided that Mrs. Johnson be awarded alimony of $1,000 per month to continue for ten years or until she either remarries, cohabits, or dies. The decree also awarded child support to Mrs. Johnson in the amount of $648 per child per month. Mr. Johnson filed an appeal with this court seeking a reversal or adjustment of the property division and the alimony and child support awards. *See Johnson v. Johnson*, 771 P.2d 696 (Utah App.1989). The facts of this case, as outlined in the previous appeal, are as follows:

The parties married in 1966, following Dr. Johnson's first year in medical school. Mrs. Johnson had a Bachelor's Degree in business. While he was in medical school, she worked, thereby supplying $14,000 to the marriage. He earned about $3,500 during that time. His parents paid for tuition and books. During his one-year internship, both worked. After 1970, she did not work outside the home. The parties have three children. After twenty years of marriage they separated, having enjoyed an affluent standard of living. They stipulated to an equal division of real and personal property, yielding $428,000 for her and $428,000 for him. Each party received over $200,000 of income-producing personal property.

*Id.* at 697. This court upheld the property division but reversed and remanded the alimony and child support awards for the entry of adequate findings.[1]

On remand, the trial court ordered that Mr. Johnson pay to Mrs. Johnson alimony in the amount of $2,250 per month. Of that sum, $250 was to terminate after four years and was for the purpose of assisting Mrs. Johnson in upgrading her employment skills. The remaining $2,000 of the alimony award was ordered to be permanent and would not terminate, even if Mrs. Johnson remarried. The trial court stated two reasons in support of the nonterminable alimony award. First, that the alimony was "to assist in the support of [Mrs. Johnson]," and second, to "further assist in allowing [Mrs. Johnson] to share in the benefits of [Mr. Johnson's] professional status."

The trial court also awarded to Mrs. Johnson one-half of Mr. Johnson's pension plan. The trial court made no findings as to how the alimony award might be affected when Mrs. Johnson became eligible to receive retirement benefits.

## ISSUES

Mr. Johnson does not appeal the amount of the alimony award. Instead, he challenges the award in two particulars: First, did the trial court abuse its discretion in awarding Mrs. Johnson alimony that was nonterminable, even upon her remarriage? Second, did the trial court abuse its discretion in not providing that the alimony be reduced when Mrs. Johnson reaches the age of fifty-nine and one-half, at which time she will be eligible to withdraw substantial retirement benefits?

## STANDARD OF REVIEW

■ Trial courts have broad discretion in making alimony awards. *Haumont v.*

---

1. This court remanded the alimony award for the entry of findings consistent with the following factors:

(1) Mrs. Johnson's needs; (2) her ability to provide for herself, including an earning capacity baseline; (3) elimination of the ten-year cap on alimony; (4) a separate finding concerning income which will flow to both parties from the respective properties awarded; and (5) an alimony award consistent with those findings.

*Johnson*, 771 P.2d at 700.

*Haumont,* 793 P.2d 421, 423 (Utah App. 1990). We will not upset a trial court's award of alimony so long as the trial court exercises its discretion within the appropriate legal standards. *Id.*

## ANALYSIS

### Alimony Beyond Remarriage

Mr. Johnson argues that the trial court abused its discretion by making the award of alimony nonterminable, even in the event that Mrs. Johnson remarries. We agree.

Alimony is presumed to terminate upon the remarriage of the receiving spouse. Utah Code Ann. § 30-3-5(5) (1989), states that "[u]nless a decree of divorce specifically provides otherwise, any order of the court that a party pay alimony to a former spouse automatically terminates upon the remarriage of the former spouse." The trial court therefore has the discretion to make an award of alimony that will survive the remarriage of the receiving spouse. In exercising this discretion, however, the trial court must make adequate and specific findings of fact justifying such an award. Such an award must also comply with the relevant legal principles governing alimony awards. *See Haumont,* 793 P.2d at 423.

The court stated that it granted nonterminable alimony "to assist in the support of [Mrs. Johnson]." This is a permissible ground for an alimony award. *See Haumont,* 793 P.2d at 423 (purpose of alimony is to maintain the receiving spouse, as nearly as possible, in the same standard of living that existed during the marriage); *Munns v. Munns,* 790 P.2d 116, 121 (Utah App.1990 (same). Standing alone, however, it is not a sufficient reason to extend alimony payments beyond the remarriage of the receiving spouse. To allow nonterminable awards to be based on this justification alone would violate the statutory presumption against such awards, since every alimony award is necessarily based upon this justification.

The court further stated that it granted nonterminable alimony to allow Mrs. John-

son to "share in the benefits of [Mr. Johnson's] professional status." We interpret this to mean she was to share in his professional degree. Utah appellate courts, however, have consistently held that professional degrees and licenses are not property subject to division upon divorce. In fact, this court expressly stated in its earlier opinion in this case that a professional degree or license is not marital property to be distributed between the parties. *Johnson,* 771 P.2d at 697.

In *Peterson v. Peterson,* 737 P.2d 237 (Utah App.1987), the parties were married near the end of their undergraduate educations. By mutual consent, Mrs. Peterson entered the work force and continued to work while Mr. Peterson obtained his medical degree. When Mr. Peterson finished his medical degree, Mrs. Peterson quit work and remained in the home. The parties had been married for over twenty years when they were divorced. The trial court awarded Mrs. Peterson, among other things, $120,000 to be paid in $1,000 monthly installments "reflecting an ownership interest of [Mrs. Peterson] in [Mr. Peterson's] medical degree." *Id.* at 238.

This court examined the law from other jurisdictions regarding the treatment of professional degrees and licenses and concluded that "an advanced degree is or confers an intangible right which, because of its character, cannot properly be characterized as property subject to division between the spouses." *Id.* at 241. This court reasoned that:

Property can be bought, sold, and devised. Bona fide degrees cannot be bought; they are earned. They cannot be sold; they are personal to the named recipient. Upon the death of the named recipient, the certificate commemorating award of the degree might be passed along and treasured as a family heirloom, but the recipient may not, on the strength of that degree, practice law or medicine. In this case, the court awarded the parties' home to Mrs. Peterson. But it might have awarded the home to Dr. Peterson or it might have ordered the home sold and the net proceeds divid-

ed. The court had no such alternatives with the medical degree, precisely because the degree is not property.

*Id.* at 240; *see also Martinez v. Martinez,* 818 P.2d 538 (Utah 1991) (overturned award of equitable restitution based on medical degree); *Gardner v. Gardner,* 748 P.2d 1076, 1081 (Utah 1988) (benefit of wife's investment in husband was adequately reflected in a greater property settlement and higher alimony); *Rayburn v. Rayburn,* 738 P.2d 238 (Utah App.1987) (disparity in income due to license is adequately addressed under traditional alimony analysis).

■ Inasmuch as it is legally impermissive to grant a share or interest of one spouse's professional degree or license to another spouse upon divorce, it is likewise impermissible to award nonterminable alimony on a finding that one spouse is entitled to share in the benefits of the other spouse's professional degree or license. Such an award is a de facto division of the professional degree or license.

We conclude that the trial court abused its discretion by violating applicable legal principles when it made Mrs. Johnson's alimony award nonterminable. We therefore vacate the trial court's award of nonterminable alimony and remand the case for entry of an order consistent with this opinion.

### Retirement Benefits

■ Mr. Johnson also claims that the trial court abused its discretion in awarding alimony that does not contemplate Mrs. Johnson's future eligibility to receive substantial retirement benefits. We agree.

In 1987, the trial court awarded one half of the parties' pension plan to each party. The division of the pension plan was not at issue in the first appeal and remains in force. In awarding alimony, the trial court made no findings with regard to Mrs. Johnson's future ability to withdraw income from the pension plan, and how this additional income would affect her financial condition and her ability to provide for her own needs.

■ We acknowledge that a trial court maintains continuing jurisdiction over alimony awards and can make future modifications as appropriate. *See* Utah Code Ann. § 30–3–5(3) (1989). However, where a future change in circumstances is contemplated by the trial court in the divorce decree, the fulfillment of that future change will not constitute a material change of circumstances sufficient to modify the award. "A change in circumstances reasonably contemplated at the time of divorce is not legally cognizable as a substantial change in circumstances in modification proceedings." *Dana v. Dana,* 789 P.2d 726, 729 (Utah App.1990); *see also Durfee v. Durfee,* 796 P.2d 713, 716 (Utah App. 1990) (a material change in circumstances contemplated in the divorce decree cannot be the grounds for a future modification). Since the trial court in the instant case divided the pension plan between the parties, it was cognizant of Mrs. Johnson's ability to receive additional income in the future that would alter her financial condition and needs. Thus, under *Dana* and *Durfee,* Mrs. Johnson could argue that her receipt of retirement benefits was an anticipated event and the trial court considered it when making the alimony award. Therefore, Mrs. Johnson's receipt of retirement benefits might not be considered a material change of circumstances.

■ We do not believe it makes for good law or sound policy to have parties arguing years after the fact over what a trial court may or may not have considered when making an alimony award. Utah appellate courts have consistently required that trial courts make adequate findings on all material issues of alimony to reveal the reasoning followed in making the award. *See Rudman v. Rudman,* 812 P.2d 73, 76 (Utah App.1991); *accord Burt v. Burt,* 799 P.2d 1166, 1170 (Utah App.1990); *Throckmorton v. Throckmorton,* 767 P.2d 121, 124 (Utah App.1988). Consequently, if a trial court knows that a party will be receiving additional future income it should make findings as to whether such additional income will affect the alimony award. The court should therefore have considered how Mrs. Johnson's future receipt of retire-

ment benefits would alter her future financial conditions and her ability to provide for her own needs. It then should have determined whether her future income would affect the alimony award.

If the future income from the pension plan is too speculative at the time of trial to anticipate the effect it will have on a receiving spouse's financial condition and needs, the court may, in its discretion, delay the determination of how the future income will affect the alimony award. However, the trial court must make findings indicating that the future income has not been considered in making the present award. Such findings will then allow the paying spouse to bring a modification proceeding at the appropriate time while satisfying the legal principles presented in *Dana* and *Durfee.*

We conclude that the trial court abused its discretion by failing to expressly indicate whether the future retirement benefits were considered in making the alimony award. We therefore remand this issue for entry of adequate findings.

### CONCLUSION

We vacate the alimony award and remand for findings and an order consistent with this opinion.

GARFF and JACKSON, JJ., concur.