*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 48**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

KIRKPATRICK MACDONALD,
*Petitioner,*

*v.*

LEE ANNE MACDONALD,
*Respondent.*

No. 20170789
Filed September 5, 2018

On Certiorari to the Utah Court of Appeals

Third District, Silver Summit
The Honorable Kara L. Pettit
No. 104500031

Attorneys:

Troy L. Booher, Julie J. Nelson, Bart J. Johnsen, Salt Lake City, for
petitioner

Matthew A. Steward, Shannon K. Zollinger, Salt Lake City, for
respondent

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE, and
JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 Kirkpatrick MacDonald (MacDonald) filed a petition to vacate or reduce the alimony award to his former spouse Lee Anne MacDonald (now known as Lee Anne Fahey). The district court denied MacDonald's petition under Utah Code section 30-3-5(8)(i)(i). In doing so it applied a standard set forth in a line of cases from our court of appeals, which allows a modification of an alimony order only if there is a substantial change in circumstances that was not "contemplated" in the original decree of divorce. *See Bolliger v. Bolliger*, 2000 UT App 47, ¶ 11, 997 P.2d 903. That decision was

affirmed on appeal to our court of appeals, but under a different standard.

¶2 The court of appeals repudiated the *contemplated in the decree* standard set forth in *Bolliger* and other cases. It concluded that those cases had been overtaken by the text of Utah Code section 30-3-5(8)(i)(i), which allows for a modification only where there is "a substantial material change in circumstances not foreseeable at the time of the divorce." But it affirmed the district court on the ground that the change in circumstances alleged by MacDonald was foreseeable at the time of the divorce in this case.

¶3 MacDonald asks us to reverse the court of appeals on the grounds that (1) the *contemplated in the decree* standard should be read into the statute by virtue of the "prior construction" canon of interpretation, *see Christensen v. Indus. Comm'n*, 642 P.2d 755, 756 (Utah 1982) (discussing the prior construction canon); and (2) the change in circumstance identified by MacDonald was neither contemplated in the divorce decree nor foreseeable at the time of the divorce. We affirm, while clarifying the standard that applies under Utah Code section 30-3-5(8)(i)(i).

¶4 We hold that there is no basis in the prior construction canon for the *contemplated in the decree* standard set forth in *Bolliger* and other cases. We base that conclusion on the absence of the core predicate for this canon—an authoritative construction by the courts of the operative language of the statute. Neither *Bolliger* nor any of the other cited cases ever attempted to interpret the text of the statute. They simply perpetuated a standard set forth in a prior line of cases (and established under a prior statutory regime). And without an authoritative construction of the statute there is no basis for the prior construction canon.

¶5 To this extent we affirm the standard embraced by the court of appeals. We hold that the plain language of the statute applies—and that the question is whether an alleged substantial change was "foreseeable" at the time of the divorce, not whether it was "contemplated" in the divorce decree. But we also raise a point of clarification that is not addressed explicitly in the decision of the court of appeals. We clarify that the inquiry of foreseeability is limited to the universe of information that was presented in the record at the time the district court entered the divorce decree.

¶6 We also affirm the court of appeals' application of the legal standard to the facts of this case under this clarified standard. We hold that MacDonald failed to carry his burden of establishing, on

the basis of the record that was before the court that entered the divorce decree, that the change that he alleges was not foreseeable.

I

¶7 MacDonald filed for divorce from Fahey in February 2010. MacDonald and Fahey entered into a mediated settlement agreement, which was fully incorporated into a divorce decree. That agreement required MacDonald to pay alimony to Fahey through December 2020 (or earlier if she remarried, cohabited, or died). Per the agreement, alimony payments increased from $2,000 per month to $6,000 per month after December 2012—the last month that MacDonald owed a monthly $4,000 property settlement payment to Fahey.

¶8 The agreement also divided the marital real property. Fahey acquired ownership to three unencumbered lots. MacDonald agreed to pay the homeowner's association fees and property taxes on those lots as a loan, for five years or until Fahey sold one of the lots, at which time Fahey would reimburse MacDonald.

¶9 After the settlement agreement was signed and the divorce decree was entered one of Fahey's lots sold for $1,425,000. MacDonald "was directly involved in and responsible for the sale." Both MacDonald and Fahey agreed to that sale prior to entry of the divorce decree. And the sale closed shortly after the decree was entered. Fahey placed most of the proceeds from the property sale into an investment account that she previously opened with the $200,000 financial settlement MacDonald paid Fahey before mediation. That investment account now produces about $45,000 in annual income for Fahey.

¶10 In light of the property sale and Fahey's new income, MacDonald filed a petition to vacate or reduce the alimony award under Utah Code section 30-3-5(8)(i). The district court denied MacDonald's petition. In so doing it applied a test from a line of cases handed down by the Utah Court of Appeals, citing *Wall v. Wall*, 2007 UT App 61, 157 P.3d 341; *Moon v. Moon*, 1999 UT App 12, 973 P.2d 431; and *Moore v. Moore*, 872 P.2d 1054 (Utah Ct. App. 1994). That test grants the district court continuing jurisdiction to modify a divorce decree when a substantial change of circumstances is "not contemplated" by the decree itself. The court concluded that the divorce decree "expressly contemplate[d] that [Fahey] would sell the lots and use the proceeds of the sales of those lots to pay her expenses[,]" therefore precluding the court from modifying the alimony award.

¶11  MacDonald appealed the denial of the petition. The court of appeals affirmed. But it based its decision on a different standard than that applied by the district court. It interpreted Utah Code section 30-3-5(8)(i)(i) to warrant a modification of alimony only when "a substantial material change in circumstances [was] not foreseeable." *MacDonald v. MacDonald*, 2017 UT App 136, ¶ 12, 402 P.3d 178. And it defined "'foreseeable' as 'being such as may reasonably be anticipated.'" *Id.* ¶ 11 (citing WEBSTER'S THIRD INT'L DICTIONARY 890 (1971)). "From the linguistic and structural position of this term in the statute" the court of appeals inferred "that the legislature purposely did not use the verb 'foresee' in its past tense, 'foreseen.'" *Id.* It also found that "distinction . . . important." *Id.* It concluded that "[i]f the provision required that the changed circumstances warranting modification were not actually foreseen, then a petitioner would bear the burden of showing that when the decree was entered the parties or the court had not actually contemplated that such a change would occur." *Id.* "Instead," the court concluded, "the legislature employed the adjective 'foreseeable,'" which in the court of appeals' view "includes not only those circumstances which the parties or the court actually had in mind, but also circumstances that could 'reasonably be anticipated' at the time of the decree." *Id.*

¶12  In so holding the court of appeals rejected the standard that MacDonald sought to import from a line of prior court of appeals cases—most significantly *Bolliger v. Bolliger*, 2000 UT App 47, 997 P.2d 903. MacDonald had cited *Bolliger* for the proposition that a successful petition for a change in alimony must show that "a substantial material change of circumstances has occurred 'since the entry of the decree and not contemplated in the decree itself.'" *Id.* ¶ 11 (emphasis removed) (quoting *Durfee v. Durfee*, 796 P.2d 713, 716 (Utah Ct. App. 1990)). Yet the court of appeals rejected the *Bolliger* standard on the ground that the court in that case had not addressed the governing statutory language, enacted by the legislature in 1995, but instead had simply carried forward a standard that had been adopted in our case law before the enactment of the governing statute. *MacDonald*, 2017 UT App 136, ¶ 16 (concluding that "the *Bolliger* court did not address whether the 1995 amendment altered the applicable standard" and holding that "the standard did change and we apply that standard today").

¶13  The court of appeals then affirmed the district court's decision under the statutory standard. It did so on the ground that it could not "say that it was unforeseeable that Fahey would sell some of the real estate and invest the proceeds" in the manner that she had

done. *Id.* ¶ 18. To support that conclusion the court of appeals emphasized the following points: (a) the "express terms" of the divorce decree "discussed certain obligations that would arise if and when Fahey sold the [p]roperty," thus leaving "no doubt" that the sale of the property was foreseeable, *id.* ¶ 19; (b) a "reasonable person will normally act in a prudent manner to protect his or her financial interests and security," such that it is "not merely foreseeable" but "likely" that a person in Fahey's position would assure that the proceeds of a real estate transaction "would not be frittered away or left to gather dust," *id.* ¶ 18; and (c) Fahey invested the $200,000 that was paid to her by MacDonald "in an investment account," such that it "is hardly a stretch to foresee that if real property were liquidated the proceeds of that sale might be deposited in that same account for investment purposes," *id.* In light of "these facts" the court of appeals held that "the trial court did not exceed its discretion when it concluded that MacDonald failed to show an unforeseeable substantial material change in circumstances from the time" of the divorce decree. *Id.* ¶ 19.

¶14 MacDonald filed a petition for certiorari. The threshold question presented is a question of law—as to the governing standard on a petition to modify an alimony award. Our review of such a question is *de novo*. *In re Baby B.*, 2012 UT 35, ¶ 41, 308 P.3d 382. We are also asked to consider the propriety of the court of appeals' application of the governing standard to the facts of this case. Our review of the court of appeals' decision is for correctness. *State v. Levin*, 2006 UT 50, ¶ 15, 144 P.3d 1096.

II

¶15 The court of appeals applied a standard that asks not whether a given change in circumstances was "contemplated" in a divorce decree but instead whether that change was "foreseeable" at the time the decree was entered. *MacDonald v. MacDonald*, 2017 UT App 136, ¶¶ 17–19, 402 P.3d 178. It defined *foreseeable* as that which "may reasonably be anticipated." *Id.* ¶ 11 (quoting WEBSTER'S THIRD INT'L DICTIONARY 890 (1971)). And it concluded that the district court did not exceed its discretion in concluding that MacDonald failed to show that Fahey's sale of the property and investment of its proceeds was "an unforeseeable substantial material change" at the time of the original divorce decree. *Id.* ¶ 19.

¶16 MacDonald challenges the court of appeals' decision on two fronts. His first argument is a challenge to the legal standard adopted by the court of appeals. His second goes to the application of that standard to the facts of this case. We affirm the judgment of

the court of appeals, but offer some clarification on the governing standard.

## A. The Governing Standard Under Section 30-3-5(8)(i)(i)

¶17 MacDonald views the *contemplated in the decree* standard as a matter established by settled case law. He asks us to reverse the court of appeals on the basis of the "prior construction" canon of statutory interpretation. This canon says that an amendment to a statutory scheme can be presumed to have incorporated an authoritative "judicial construction[]" of statutory language that was in place when the legislature adopted the amendment. *See Christensen v. Indus. Comm'n*, 642 P.2d 755, 756 (Utah 1982). MacDonald views this canon as applicable because he sees the *contemplated in the decree* standard as an established judicial construction of Utah Code section 30-3-5(8)(i)(i). He claims that the court of appeals erred in crediting the statutory text, which speaks in terms of an *unforeseeable* change rather than one not specifically *contemplated* in a divorce decree, because he thinks that the prior construction canon compels the conclusion that the statute incorporates the interpretation embraced in *Bolliger* and other cases.

¶18 The parties argue over two separate components of the operative test. The first goes to the relevant verb and verb tense: MacDonald says that the operative standard is *contemplated*, meaning actually anticipated (past tense) at the time of the divorce decree, while Fahey says that the standard is *foreseeable*, meaning reasonably capable of being anticipated. The parties argue at length about this question, with MacDonald insisting that the prior construction canon requires an inquiry into whether the alleged change was contemplated and Fahey asserting that the statutory language is clear in speaking only of reasonable foreseeability.

¶19 But this is not the only dimension of the parties' disagreement. MacDonald is also asking for a standard that speaks to the relevant universe of information to be considered in assessing contemplation (or foreseeability). In arguing for a *contemplated in the decree* standard MacDonald is also asking us to confine the analysis of whether a certain change was contemplated or foreseeable to information set forth in the divorce decree or at least evident in the record of the district court.

¶20 We hold that the prior construction canon is not applicable in these circumstances. We find no authoritative judicial construction of the governing statutory text and thus hold that there is no basis for a conclusion that the legislature adopted the standard endorsed in a line of case law into the terms of the statute. And on that basis

we affirm the court of appeals' determination that Utah Code section 30-3-5(8)(i)(i) means what it says—a court has authority to grant a petition to modify an alimony order if there is a "substantial material change in circumstances not *foreseeable* at the time of the divorce." (Emphasis added).

¶21 We explain the basis for this conclusion in Part II.A.1 below. But this speaks only to the verb and verb tense question. That leaves the question of the relevant universe of information to consider in deciding whether an alleged "substantial material change in circumstances" is foreseeable. This is a question that the court of appeals did not address expressly. We consider it in Part II.A.2, and conclude that MacDonald is right to suggest that foreseeability should be assessed on the basis of information either in the divorce decree or at least in the record of the court that entered it.

1. "Not Contemplated" or "Not Foreseeable"? (The Prior Construction Canon)

¶22 The prior construction canon applies where "a word or phrase" in a statute "has been authoritatively interpreted by the highest court in a jurisdiction, or has been given a uniform interpretation by inferior courts." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 322 (2012). Where this premise is established the courts treat the authoritative interpretation of a word or phrase as a legal term of art. And a "later version" of a statute "perpetuating the wording is presumed to carry forward" the established judicial interpretation. *Id.*; *see id.* at 324 (articulating the "term of art" justification for this canon; noting that a word or phrase that has been authoritatively construed acquires a "technical legal sense" that "should be given effect in the construction of later-enacted statutes"); *see also Rueda v. Utah Labor Comm'n*, 2017 UT 58, ¶ 94 & n.32, __ P.3d __ (opinion of Durrant, C.J.) (relying on the prior construction canon to conclude that "by accident" is a term of art in the Workers' Compensation Act).

¶23 This canon, however, requires an actual *prior construction*. All of our cases that have embraced this canon have arisen in circumstances in which a statutory amendment or reenactment is adopted in the face of a body of cases *interpreting the words of the*

*statute.*[1] That stems from the central premise of the canon. Without a prior judicial construction of the terms of a statute there is no basis for the conclusion that the legislature has "carr[ied] forward" the judicial interpretation given to a prior version of the statute. SCALIA & GARNER, READING LAW 322.

¶24 And here we have no basis for this crucial premise of the canon. None of the cases cited by MacDonald involves an attempt to interpret the controlling language of Utah Code section 30-3-5(8)(i)(i). The *contemplated in the decree* standard, in fact, was applied in our case law well before the initial adoption of the controlling statute. That statute (which speaks of whether an alleged change was "foreseeable") was first enacted in 1995. UTAH CODE § 30-3-5(5)(g)(i) (1995). Before that date, the governing statute said nothing of foreseeability (or contemplation). It simply recognized the broad discretion of the court to grant a petition to modify. *Id.* § 30-3-5(3) (1994) ("The court has continuing jurisdiction to make subsequent changes or new orders for the support and maintenance of the parties . . . as is reasonable and necessary.").

¶25 The body of cases invoked by MacDonald to support the *contemplated in the decree* standard existed under this broad, general provision. The reference to a change "contemplated" in the divorce decree traces back to a series of decisions of this court.[2] But there are no Utah Supreme Court cases on this issue after the 1995 enactment of the now-controlling statute. And there is accordingly no

---

[1] *See, e.g.*, *Rocky Mountain Helicopter, Inc. v. Carter*, 652 P.2d 893, 895–96 (Utah 1982) (explaining that the statutory text at issue was "squarely addressed in" a previous case, determining that the later amendments were minor, and concluding that the legislature adopted our interpretation when it "re-enact[ed] th[e] subdivision without substantial change"); *State v. Roberts*, 190 P. 351, 352 (Utah 1920) (applying the prior construction canon where a prior case interpreted the statute and "the Legislature re-enacted the section in the precise language as it was when it was construed in the [prior] [c]ase"); *see also Jedrziewski v. Smith*, 2005 UT 85, ¶¶ 12–13, 128 P.3d 1146 (rejecting the application of the prior construction canon in the absence of a majority opinion interpreting the statute).

[2] *Mineer v. Mineer*, 706 P.2d 1060, 1062 (Utah 1985); *Stettler v. Stettler*, 713 P.2d 699, 701 (Utah 1985); *Naylor v. Naylor*, 700 P.2d 707, 710 (Utah 1985); *Lea v. Bowers*, 658 P.2d 1213, 1215 (Utah 1983).

authoritative decision from this court—no Utah Supreme Court "judicial construction" to sustain the prior construction canon.

¶26 The same goes for the Utah Court of Appeals. There is again a long line of court of appeals decisions that speak in terms of a change "contemplated" in a divorce decree.[3] But the seminal cases trace back to a time that long predates the 1995 enactment of the now-controlling statute.[4] And the post-1995 cases, to the extent they restate the *contemplated in the decree* standard, do so without any independent statutory analysis—without any authoritative judicial construction.

¶27 MacDonald points to *Bolliger v. Bolliger*, 2000 UT App 47, 997 P.2d 903, for his contrary conclusion. *Bolliger* was indeed handed down after the 1995 enactment of the controlling statute. And, as MacDonald notes, *Bolliger* does apply the *contemplated in the decree* standard. *See id.* ¶¶ 11–20. But *Bolliger* still does not hand down an authoritative judicial construction of the 1995 statute. As the court of appeals in this case noted, *Bolliger* punts on this question on the ground that the parties in that case had not challenged the applicability of case law "requiring evidence that [an alleged] change was *foreseen* at the time of the divorce." *Id.* ¶ 11 n.3 (emphasis added).

---

[3] *See, e.g.*, *Young v. Young*, 2009 UT App 3, ¶ 9, 201 P.3d 301 (citing the alimony modification statute and holding that "social security benefits can constitute a substantial material change in circumstances for alimony modification purposes, so long as not *expressly foreseen* in the original decree of divorce" (emphasis added)); *Wall v. Wall*, 2007 UT App 61, ¶ 11, 157 P.3d 341 (noting that a substantial change of circumstances must not be "contemplated in the decree itself" but further stating that a change "reasonably contemplated at the time of divorce . . . is not legally cognizable as a substantial change in circumstances" (quoting *Moore v. Moore*, 872 P.2d 1054, 1055 (Utah Ct. App. 1994), and *Dana v. Dana*, 789 P.2d 726, 729 (Utah Ct. App. 1990))); *Nelson v. Nelson*, 2004 UT App 254, ¶ 2, 97 P.3d 722 (quoting the alimony modification statute and then quoting the *contemplated in the decree* standard); *Bolliger v. Bolliger*, 2000 UT App 47, ¶ 11, 997 P.3d 903 (quoting the alimony modification statute and then quoting the *contemplated in the decree* standard).

[4] *See, e.g.*, *Moore*, 872 P.2d at 1055–56; *Throckmorton v. Throckmorton*, 767 P.2d 121, 124 (Utah Ct. App. 1988).

¶28 That concession was understandable given that the divorce decree in that case was entered in 1987—many years before the 1995 enactment of the new statute. *See id.* ¶ 2. The timing of the divorce decree is likely the explanation for the court of appeals' determination that the older cases were "sound and grounded in principles of res judicata." *Id.* ¶ 11 n.3. If a divorce decree was handed down at a time when an earlier legal regime was in place, the parties might well have expected that their decree would be governed by the law in place at that time. *See State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829 ("[W]e apply the law as it exists at the time of the event regulated by law in question."). The *Bolliger* court, in any event, seemed to think of it that way. And it surely did not engage in an interpretation of the 1995 statute. Nor did any of the other cases cited by MacDonald.

¶29 We reject MacDonald's threshold argument on this basis. We hold that an essential premise of the prior construction canon is a prior construction of the operative statutory language. And because there was no prior construction of Utah Code section 30-3-5(8)(i)(i) we agree with the court of appeals that the meaning of the statute was an open question.

¶30 We also agree with the court of appeals that the statute plainly contradicts the body of cases cited by MacDonald on the verb tense point that he raises. The statute speaks clearly and unequivocally in terms of a showing of a substantial material change that is "not foreseeable." UTAH CODE § 30-3-5(8)(i)(i). That verb and verb tense are inconsistent with the "contemplated" formulation in the prior case law. We affirm the court of appeals and repudiate the *contemplated* standard in the case law on this basis.

2. The Record for Assessing Foreseeability

¶31 The above conclusion, however, does not resolve the second dimension of MacDonald's argument—the question of the relevant universe of information to be considered in deciding whether an alleged substantial material change is foreseeable. The foreseeability inquiry requires a threshold determination of the relevant scope of information to be considered. It is not enough to simply note that something is foreseeable if it can be reasonably anticipated. *See MacDonald v. MacDonald*, 2017 UT App 136, ¶ 11, 402 P.3d 178 (citing a dictionary definition to this effect). Anything and everything *can be* reasonably anticipated if we assume omniscient access to enough information. But that cannot be what the statute has in mind— otherwise the statute would be a nullity, and we cannot construe it as such. *See Meinhard v. State*, 2016 UT 12, ¶ 33, 371 P.3d 37.

¶32 In this sense the governing statute is underdeterminate. It articulates the governing standard ("not foreseeable"). And it identifies the relevant timeframe ("at the time of the divorce"). *See* UTAH CODE § 30-3-5(8)(i)(i). But it doesn't tell us what information to consider in deciding whether an alleged substantial change is foreseeable.

¶33 We can answer that question, however, by resorting to a body of case law—the same body of cases discussed in Part II.A.1 above. We have refused to treat those cases as having adopted an authoritative judicial construction of *foreseeability* under the statute because the cited cases never interpreted the term *foreseeable*. They announced a standard requiring that a change be *actually contemplated*, and they did so in a line of cases handed down under a statutory regime that did not identify a legal standard but instead conferred broad discretion on the trial court. The *actually contemplated* standard is in nowise an interpretation of the governing statute. And we have declined to deem it incorporated into the statute under the prior construction canon of interpretation.

¶34 But that does not render this body of cases irrelevant. The cases do more than just speak to the relevant verb tense. They also speak to the relevant universe of information that is to be considered in assessing whether an alleged change is sufficient to sustain a petition to modify. On that question the cases cited by MacDonald are clear and consistent. For years our "appellate courts have consistently required that trial courts make adequate findings on all material issues of alimony to reveal the reasoning followed in making the award." *Johnson v. Johnson*, 855 P.2d 250, 253 (Utah Ct. App. 1993). Our court of appeals has accordingly noted that "if a trial court knows that a party will be receiving additional future income it should make findings as to whether such additional income will affect the alimony award." *Id.* And it has connected this requirement to a limitation on the scope of information that courts can consider in assessing whether an alleged substantial change is sufficient to sustain a petition to modify an alimony award.

¶35 The court of appeals has explained how the trial court is to decide whether to consider future income in making an alimony award. In the *Johnson* case the court noted that "[i]f . . . future income . . . is too speculative at the time of trial to anticipate the effect it will have on a receiving spouse's financial condition and needs, the court may, in its discretion, delay the determination of how the future income will affect the alimony award." *Id.* at 254. But the court also identified a means for this "delay": the court can "make findings indicating that the future income has not been considered in making

the present award." *Id.* And "[s]uch findings will then allow the paying spouse to bring a modification proceeding at the appropriate time while" establishing that substantial material changes were not foreseeable (within the meaning of the statute). *Id.*

¶36 The court of appeals has held, in other words, that "[t]he fact that the parties may have anticipated an increase of income in their own minds or in their discussions does not mean that" the change is foreseen or foreseeable. *Durfee v. Durfee*, 796 P.2d 713, 716 (Utah Ct. App. 1990). "In order for a material change in circumstances" to be foreseen or foreseeable "there must be evidence, preferably in the form of a provision within the decree itself, that the *trial court* anticipated the specific change." *Id.* (emphasis added).

¶37 This is an answer to the scope of information question. It is consistently established in the above line of cases. And we think it appropriate to adopt this limitation as a gloss on the standard set forth in Utah Code section 30-3-5(8)(i)(i).

¶38 When the legislature enacted this statute in 1995 it overrode the *actually contemplated* standard set forth in the case law. *See* SCALIA & GARNER, READING LAW 256 ("If the legislature amends or reenacts a provision . . . a significant change in language is presumed to entail a change in meaning."). But it did not override the other element of these cases—the element limiting the foreseen or foreseeable inquiry to information contained in the record of the trial court that entered the divorce decree. The statute, in fact, is silent on the threshold inquiry into the universe of information that is to be considered in the foreseeability analysis. *Supra* ¶ 32. This inquiry is a necessary predicate to the court's determination that a change is foreseeable. *Supra* ¶ 31. That means the 1995 statute does not comprehensively cover the alimony modification standard. And when the legislature prescribes a rule "not 'in full,'" "what remains is to be governed by preexisting law, unamended." SCALIA & GARNER, READING LAW 96. The court of appeals previously answered this threshold question. *See, e.g., Durfee*, 796 P.2d at 716; *Dana v. Dana*, 789 P.2d 726, 729 (Utah Ct. App. 1990). And our preexisting determination on the relevant scope of information remains controlling, so long as it is consistent with the terms of the controlling statutory scheme. For that reason we find it appropriate to incorporate this aspect of the cases cited by MacDonald into the statute.

¶39 We do so not on the basis of the prior construction canon of interpretation but because the 1995 statute does not comprehensively detail the foreseeability inquiry. That inquiry must be conducted by

reference to some appropriate universe of information. And because the statute does not itself speak to that universe we look to preexisting law to regulate the relevant scope of information—our court of appeals' cases.

¶40 This conclusion responds to a practical or policy argument advanced by MacDonald. MacDonald has insisted that the *contemplated in the decree* standard is necessary to reconcile the standard for alimony modification with the standard we established for prospective modification (within an alimony decree). *See Richardson v. Richardson*, 2008 UT 57, 201 P.3d 942. In *Richardson* we held that a divorce decree may be *prospectively* modified (within the decree itself) only as to future events that are "certain to occur within a known time frame." *Id.* ¶ 10. In MacDonald's view the *contemplated in the decree* standard from the court of appeals cases is an essential counterpart to the *Richardson* test. Thus, MacDonald says that (a) a future event that is certain to occur within a known time frame may be built into the divorce decree, with a prospective modification triggered by the occurrence of that event; but (b) a future event that is less certain but foreseen should be noted by findings by the court that entered the divorce decree, in a manner that opens the door to a petition for modification. As to events not expressly contemplated in the decree, however, MacDonald asserts that they are not sufficient to sustain a petition to modify.

¶41 MacDonald's concerns are valid. But his point goes only to the universe of information question. It provides additional, pragmatic support for assessing foreseeability on the basis of information evident in the record before the district court that handed down the divorce decree. For these and other reasons we agree with MacDonald that the foreseeability of an alleged substantial change should be assessed only on the basis of material available in the record of the trial court that entered the original divorce decree (or that is the proper subject of judicial notice).

## B. Application of the Governing Standard

¶42 MacDonald also challenges the court of appeals' application of the governing standard under Utah Code section 30-3-5(8)(i)(i). He first notes that the divorce decree did "not obligate" Fahey to sell her property. And he accordingly suggests that the sale of the property was not foreseeable when it sold almost immediately after the divorce decree was entered.

¶43 MacDonald also contends that the court of appeals erred in basing its assessment of foreseeability on the vague notion that an owner might sell her property and that most people are likely to be

prudent with their finances. In MacDonald's view "a quick sale at a windfall price" was not foreseeable, nor was "the amount of money" Fahey would ultimately "generate." Thus, MacDonald suggests that the statute contemplates a specific notion of foreseeability—foreseeability of a specific decision to invest the proceeds of the property sale (rather than spend them or use them in some other way) in a manner creating a specific stream of income.

¶44 We affirm. The sale of the property was foreseeable under the express terms of the decree. And MacDonald has not established that Fahey's investment of the proceeds was unforeseeable.

¶45 The divorce decree's express provisions confirm that the sale of the property was foreseeable. The decree expressly "discussed certain obligations that would arise if and when Fahey sold the [p]roperty." *MacDonald v. MacDonald*, 2017 UT App 136, ¶ 19, 402 P.3d 178. It mandated "that certain expenses would be paid from the proceeds flowing from the sale of the awarded real property." *Id.* The express terms of the decree thus "leave[] no doubt that the sale of the [p]roperty" was foreseeable. *Id.*

¶46 MacDonald highlights aspects of the transaction—the precise sales price and exact timing of the sale—that he claims were unforeseeable. And he asserts that the unforeseeability of these details sustains his petition to reopen the alimony award at issue. We disagree. An alimony award may be reopened when a petitioner identifies a "substantial material change in *circumstances* not foreseeable at the time of the divorce." UTAH CODE § 30-3-5(8)(i)(i) (emphasis added). That means that the petitioner bears the burden of showing that the changed circumstances that he claims to be material were unforeseeable (based on evidence in the record at the time of the initial divorce decree). Some details will always be unforeseeable. No one could have foreseen the precise sales price to the penny or the exact date of the closing of the transaction. But these are not the alleged material circumstances. The relevant circumstance was the sale of the property (and subsequent investment of the proceeds, which we discuss below). And MacDonald has not shown that that was not foreseeable.

¶47 MacDonald bears the burden of proving unforeseeability, moreover. And he must do so on the basis of evidence in the original trial record. The record evidence is sparse—consisting of the divorce petition, the stipulated agreement, the trial court's findings of fact

and conclusions of law, and the decree of divorce.[5] And none of these documents provide a basis for MacDonald's assertion that the approximate date or sales price of the property were unforeseeable. Certainly we have "no evidence that the parties agreed to the property distribution based on any mutual understanding of the value of the parcels involved." *MacDonald*, 2017 UT App 136, ¶ 19 n.7. Nor do we have any basis for concluding that the foreseeable property sale had an expected sale date.

¶48 We also agree with the court of appeals that MacDonald failed to carry his burden of proving that Fahey's investment of the proceeds of this transaction was unforeseeable. *Id.* ¶ 18. The court of appeals took judicial notice of the notion that "[a] reasonable person will normally act in a prudent manner to protect his or her financial interests and security." *Id.* It also stated that "[i]t would be unreasonable to expect that Fahey would necessarily either dissipate [the cash settlement she received from the decree] in the short term or that she would otherwise not handle these funds in a financially prudent manner." *Id.* We find no error in this approach.

¶49 MacDonald is right to note that the foreseeability inquiry cannot rest on *post hoc* rationalizations about what a reasonable person might likely have done. The focus must be on information in the record at the time of the entry of the original divorce decree. But that does not foreclose a court's judicial notice of the sorts of financial choices that a reasonable person is likely to make. Nor does it excuse the petitioner from carrying his burden of proof. And here MacDonald has not established that it was unforeseeable, based on the record of the trial court that entered the original divorce decree, that Fahey would invest the proceeds of the foreseeable property sale in the general manner in which she invested them.

¶50 Some of the details of the investment may have been unforeseeable. The specific broker that Fahey would ultimately use, for example, likely was not foreseeable. Nor was the precise rate of return that she would earn. But those are minor details—not the core material circumstance that MacDonald claims has changed. That circumstance is the availability of an income stream generated by a property sale and a conservative investment of the proceeds. And MacDonald has not shown that those events were unforeseeable at

---

[5] The remaining documents filed in the record prior to the divorce decree entry are not relevant to the issues before us.

the time of the divorce decree and based on the record in the court that entered that decree.[6] We affirm on that basis.

¶51 In so doing we also reject MacDonald's assertion that the fact-intensive nature of the foreseeability inquiry requires a remand to the district court. Such a remand would have been permissible—certainly within the discretion of the court of appeals. But we see no reason to require it. And we affirm on the ground that MacDonald has failed to carry his burden of establishing that the sale of property and investment of proceeds was unforeseeable.

## III

¶52 A petition to modify an alimony order requires a showing of "a substantial material change in circumstances [that was] not foreseeable at the time of the divorce." UTAH CODE § 30-3-5(8)(i)(i). We hold that this provision means what it says. A petitioner must make a showing that a substantial, material change was "not foreseeable at the time of the divorce." We affirm the court of appeals on this point, and we repudiate a line of cases that had held that a petition to modify can be sustained upon a showing that an alleged material change was not "contemplated" in the divorce decree.

¶53 In so doing we clarify, however, that the foreseeability inquiry must be based on evidence that was in the record of the trial court that entered the decree. And we affirm the court of appeals' determination that MacDonald failed to carry his burden of establishing that Fahey's sale of the property and investment of the proceeds were not foreseeable.

---

[6] The court of appeals seems to have reached outside the relevant record in concluding that Fahey's generation of investment income was foreseeable in light of the fact that "Fahey put the $200,000 [cash settlement], which was paid prior to the execution of the Agreement, in an investment account." *MacDonald*, 2017 UT App 136, ¶ 18. In light of that evidence, the court of appeals concluded that "[i]t is hardly a stretch to foresee that if real property were liquidated the proceeds of that sale might be deposited in that same account for investment purposes." *Id.* But the premise of this analysis does not appear in the record of the trial court that entered the original divorce decree. For that reason we do not rely on Fahey's alleged investment of the $200,000 settlement in our foreseeability analysis.