**2018 UT App 175**

# THE UTAH COURT OF APPEALS

GARY LYNN ARMENDARIZ,
Appellant,
*v.*
PIXIE MARIE ARMENDARIZ,
Appellee.

Opinion
No. 20160997-CA
Filed September 7, 2018

Second District Court, Farmington Department
The Honorable John R. Morris
No. 044700632

Matthew G. Koyle, Attorney for Appellant

Robert L. Neeley, Attorney for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which
JUDGE GREGORY K. ORME concurred. JUDGE RYAN M. HARRIS
concurred, with opinion.

TOOMEY, Judge:

¶1    Gary Lynn Armendariz and Pixie Marie Armendariz divorced in 2005 after almost twenty-nine years of marriage. Gary[1] entered early retirement in 2015, claiming that physical pain prevented him from working in a position similar to his employment during the marriage. As a result, Gary's income decreased after he retired, and he petitioned the district court to modify the divorce decree by terminating Pixie's award of

---

1. "As is our practice in cases where both parties share a last name, we refer to the parties by their first name with no disrespect intended by the apparent informality." *Smith v. Smith*, 2017 UT App 40, ¶ 2 n.1, 392 P.3d 985.

alimony (the Petition to Modify). The district court denied the Petition to Modify, concluding that Gary's retirement was foreseeable at the time of divorce and that his early retirement was voluntary and therefore did not constitute a material and substantial change of circumstances. Gary appeals, and we affirm.

¶2    Gary and Pixie's 2005 divorce decree identified three events that would terminate Gary's alimony obligation: (1) Pixie's remarriage, (2) "her creation of a cohabitation relationship with a person of either sex," or (3) "her death." It also provided that Pixie would receive a "50% distributive share of [Gary's] federal civilian employment civil service retirement account as of and not beyond the entry date of the decree of divorce." Gary had worked as an aircraft mechanic at Hill Air Force Base for thirty-five years before retiring at the age of sixty-one.

¶3    Near the end of 2014, Gary filed the Petition to Modify, asking the court to modify the divorce decree and terminate his alimony obligation, based on his planned retirement the next year. According to the Petition to Modify, he wanted to retire early because he was "simply unable to continue [working]." Because of his retirement, Gary asserted that, "[f]or some reason, [Pixie] believes she is entitled to her alimony, and her appropriate share of [Gary's] retirement accounts, which would obviously be inappropriate and inequitable."

¶4    During the bench trial, Gary testified that he suffered an injury in a car accident in 1998 that broke all of the metatarsal bones in his foot. Then, in 2011 and 2012, Gary underwent shoulder surgeries to repair torn rotator cuffs in each shoulder. As a result of these injuries, Gary claimed it was too painful to continue working and therefore sought early retirement.

¶5    After the bench trial, the court entered an order with supporting findings of facts and conclusions of law. The court concluded that it "[did] not have jurisdiction to terminate

alimony" because Gary's retirement was foreseeable at the time of divorce and nothing in the divorce decree provided that retirement would terminate his alimony obligations. It found that the divorce decree allocated half of Gary's retirement account accrued during the time of the marriage to Pixie, but the decree did not provide that receipt of the retirement funds would "modify, terminate, or amend the award of alimony to [Pixie]." In its oral ruling, the court also found that there was no evidence, other than Gary's anecdotal statements, that his injuries rendered him disabled and unable to continue working. It further found that Gary "admitted under cross-examination that he didn't even seek alternative employment or reassignment," and he did not provide any information that his employer had "talked to him about the quality of his work" or his ability to continue working. Without additional evidence to support his inability to continue working, the court concluded that his early retirement was voluntary. For these reasons, the court denied the Petition to Modify. Gary appeals.

¶6      Gary contends the district court erred in determining that his retirement was foreseeable at the time the divorce decree was entered. "In a divorce action, the district court is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Anderson v. Anderson*, 2018 UT App 19, ¶ 19, 414 P.3d 1069 (quotation simplified). We review a district court's determination regarding a petition to modify a divorce decree for an abuse of discretion. *MacDonald v. MacDonald*, 2017 UT App 136, ¶ 7, 402 P.3d 178, *aff'd*, 2018 UT 48; *see also Earhart v. Earhart*, 2015 UT App 308, ¶ 5, 365 P.3d 719 ("A district court's determination regarding whether a substantial change of circumstances has occurred is presumptively valid, and our review is therefore limited to considering whether the district court abused its discretion.").

¶7      The district court "has continuing jurisdiction to make substantive changes and new orders regarding alimony based on a substantial material change in circumstances *not foreseeable* at

the time of the divorce." Utah Code Ann. § 30-3-5(8)(i)(i) (LexisNexis Supp. 2017) (emphasis added). In *MacDonald*, this court addressed the "foreseeability standard" and determined that, rather than use "the verb 'foresee' in its past tense, 'foreseen,'" the "legislature employed the adjective 'foreseeable,' which includes not only those circumstances which the parties or the court actually had in mind, but also circumstances that could 'reasonably be anticipated' at the time of the decree." 2017 UT App 136, ¶ 11. Our supreme court has affirmed our interpretation of section 30-3-5-(8)(i)(i) and clarified that "the foreseeability inquiry requires a threshold determination of the relevant scope of information to be considered" and that "it is not enough to simply note that something is foreseeable if it can be reasonably anticipated." *See MacDonald v. MacDonald*, 2018 UT 48, ¶ 31. The inquiry of foreseeability is therefore limited to the universe of information that was presented in the record at the time the district court entered the divorce decree." *Id.* ¶ 5.

¶8 Here, the fact of Gary's retirement was a foreseeable event at the time of the divorce. Gary contributed to a retirement account during the marriage, and a provision of the divorce decree provided that Pixie was entitled to half of that account accrued during their marriage. The fact of Gary's retirement was therefore "foreseeable under the express terms of the decree." *See id.* ¶¶ 5, 44. And Gary admitted at the bench trial that "[w]hen [he] divorced [Pixie] in 2005 . . . [he had] anticipated to work until [he] was 65." The divorce decree also identified three specific events that would terminate Pixie's alimony, but nothing in the decree "specifically call[ed] out retirement as an event which would terminate the alimony obligation." None of these provisions included language that Gary's retirement or the distribution of half of his retirement fund to Pixie would terminate Gary's alimony obligation.[2] We therefore conclude the

---

2. Similar to the appellant in *MacDonald*, Gary argues that *Bolliger v. Bolliger*, 2000 UT App 47, 997 P.2d 903, is controlling and that this court should apply the standard from a prior

(continued…)

district court did not abuse its discretion in determining Gary's retirement was a foreseeable event at the time the divorce decree was entered[3] and that nothing in the decree supports the conclusion that retirement was a triggering event for termination of his alimony obligation.[4]

---

(…continued)
version of Utah Code section 30-3-5(8)(i)(i). But *MacDonald* explicitly stated that, although the *Bolliger* court "did not address whether the 1995 amendment [to this statute] altered the applicable standard . . . the standard did change and we apply that standard today." 2017 UT App 136, ¶ 16; *see also MacDonald* 2018 UT 48, ¶¶27–29. As a result, any reliance on cases that do not apply the current foreseeability standard for a petition to modify alimony is misplaced.

3. Because we conclude Gary's retirement was a foreseeable event at the time of divorce and nothing in the divorce decree provided that retirement would terminate Gary's alimony obligation, we decline to address the remainder of Gary's arguments that relate to whether his early retirement was voluntary.

4. This latter proposition is not surprising as a legal matter, although it is perhaps counterintuitive at first blush. Alimony is a form of support, terminable on remarriage and other specific occurrences, limited to the duration of the marriage, and subject to adjustment in the event of a material change of circumstances. *See generally* Utah Code Ann. § 30-3-5(8)–(10) (LexisNexis Supp. 2017). In contrast, retirement benefits are a property interest, allocable to the named beneficiary if separate property or distributed as marital property if part of the marital estate. *See Johnson v. Johnson*, 2012 UT App 22, ¶¶ 11–13, 270 P.3d 556, *aff'd in part and rev'd in part on other grounds by* 2014 UT 21, 330 P.3d 704. Entitlement to retirement benefits is not a function of need, and that entitlement does not end with remarriage or

(continued…)

¶9    We conclude that Gary's retirement was foreseeable at the time the divorce decree was entered and the decree did not provide that Gary's alimony obligation would terminate upon his retirement. Accordingly, we affirm.

_____

HARRIS, Judge (concurring):

¶10    I concur in full with the majority opinion, because in my view the result in this case is compelled by the plain language of Utah Code section 30-3-5(8)(i)(i), which allows district courts to

_____

(…continued)
cohabitation. *See id.* ¶ 11 (providing that "an employee spouse's retirement benefits are subject to equitable distribution in a divorce proceeding, provided that the benefits accrued in whole or in part during the marriage" (quotation simplified)). But there is an indirect connection between the two. Alimony is a function of need and ability to pay. *See* Utah Code Ann. § 30-3-5(8)(a)(i)–(iii). To the extent that a spouse otherwise entitled to alimony becomes eligible for retirement benefits, her actual need may well be reduced. And by the same token, if the spouse obligated to pay alimony receives less in retirement than he earned while working, his ability to pay may likewise be reduced. Seen from this perspective, Judge Harris makes an excellent point: where a payor spouse experiences a drop in income at retirement, or where a payee spouse receives significant benefits associated with either spouse's retirement, such changes may well make alimony unnecessary or at least suggest that the amount of alimony be reduced. Thus, anticipating such changes and adjusting alimony accordingly, either prospectively or at the time they occur, makes a great deal of sense. *See infra* ¶¶ 10–12. But the majority does not see any need for amendment of the applicable statute. Family law practitioners need only recognize that in all but a handful of divorce cases, retirement is inevitable, and thus a foreseeable, event. As such, it should routinely be dealt with explicitly in the divorce decree.

modify alimony orders only where there exists a change in circumstances that is both (a) substantial and material, and (b) "not foreseeable at the time of the divorce." (LexisNexis Supp. 2017); *see also MacDonald v. MacDonald*, 2017 UT App 136, ¶ 12, 402 P.3d 178 (interpreting the statute to require that "a change in circumstances, even a substantial one, can only form the basis for the modification of alimony if that circumstance was not *foreseeable*—as opposed to actually foreseen—at the time of the divorce" (quotation simplified)), *aff'd*, 2018 UT 48. As the majority opinion recognizes, retirement will usually be foreseeable, and clearly was in this case. *See supra* ¶ 7. Accordingly, I agree that the district court did not abuse its discretion in determining that the requirements of the statute were not met, and therefore did not err in declining to consider a modification to the applicable alimony order.

¶11    I write separately for two reasons. First, I wonder whether this result—especially as applied to retirement—is truly what our legislature intended. While it is of course the legislature's task—and not ours—to weigh competing policy considerations and craft legislation, it seems to me that there are compelling policy reasons to prefer the rule discussed in our previous decision in *Bolliger v. Bolliger*, 2000 UT App 47, 997 P.2d 903, interpreting the statutory language in effect prior to the 1995 statutory amendment discussed in *MacDonald*, 2017 UT App 136, ¶ 12 n.4. Under the previous rule, "a party's retirement or receipt of social security, unless expressly foreseen at the time of the divorce, may amount to a substantial material change of circumstances entitling the petitioner to a determination of whether the alimony [order] should be modified." *Bolliger*, 2000 UT App 47, ¶ 20. The language of the current statute, by contrast, could give rise to situations in which payor spouses are saddled with alimony obligations that were computed based on pre-retirement income but that, subsequent to their retirement, they may not realistically be able to meet. If that result is not

what the legislature intended, then it should consider amending the statute.

¶12     Second, assuming that the current statutory scheme remains in place, I urge family law practitioners and district judges, when negotiating and drafting alimony provisions in decrees of divorce, to make a practice of taking into account the parties' likely future retirement, and making appropriate *ex ante* adjustments to the payor spouse's future payment obligations to account for significant foreseeable post-retirement changes in the parties' financial situation, including the extent to which the payee spouse will receive significant retirement benefits, and including any changes in the payor spouse's income.

_____