2020 UT App 141

# THE UTAH COURT OF APPEALS

HUGH LYNN BJARNSON,
Appellant,
*v.*
JENNIFER LOU BJARNSON,
Appellee.

Opinion
No. 20190734-CA
Filed October 16, 2020

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 164400963

Aaron R. Harris, Attorney for Appellant

Rosemond G. Blakelock and Megan P. Blakelock,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

ORME, Judge:

¶1     Hugh Lynn Bjarnson and Jennifer Lou Bjarnson were married in 2008. In 2016, Hugh[1] filed for divorce, and the parties separated three months later. Following a bench trial, the district court entered a decree of divorce in 2019. The court's alimony determination is the sole point of contention on appeal.

---

1. Because the parties share the same surname, we refer to them by their first names, with no disrespect intended by the apparent informality.

¶2 Following the couple's separation, Jennifer moved in with her ailing mother, with whom she had also lived between the time she separated from a former husband and when she moved in with Hugh. She could not recall how long she had lived with her mother the first time but said that she had done so "briefly." Her mother's residence is a fully furnished three-level home, on five acres, in which Jennifer had her own bedroom. When she moved in following her separation from Hugh, she did not pay rent, although she provided care to her mother and testified that she paid her mother's water assessment. Jennifer asserted at trial that she could not afford to rent an apartment at that time and was "living there because [she had] nowhere else to live." It was entirely unclear how long she would remain there.[2]

¶3 The court determined that Jennifer was entitled to a monthly alimony award of $1,830, $1,000 of which accounted for her anticipated monthly housing expense, as reflected in her financial declaration. But because she was not obligated to pay rent while living with her mother, the court ordered Hugh to make alimony payments "for the length of the marriage in the amount of $830 per month until . . . Jennifer secures her own housing," at which time the "alimony will increase to $1,830 per month." Hugh appeals.

¶4 Hugh's argument is limited to the prospective aspect of the district court's alimony award. He does not challenge the $830 monthly obligation currently payable. Instead, he contends that the court exceeded its discretion by ordering a prospective increase in his alimony obligation based upon an uncertain future event. We agree.

---

2. Nothing in the record or briefing suggests that Jennifer's living situation has changed subsequent to entry of the divorce decree.

¶5 Although "trial courts have broad latitude in determining whether to award alimony and in setting the amount, and we will not lightly disturb a trial court's alimony ruling, . . . we will reverse if the court has not exercised its discretion within the bounds and under the standards we have set." *Rule v. Rule*, 2017 UT App 137, ¶ 11, 402 P.3d 153 (quotation simplified). *See also State v. De La Rosa*, 2019 UT App 110, ¶ 4, 445 P.3d 955 ("Trial courts do not have discretion to misapply the law.") (quotation simplified). We conclude that it was legal error for the district court to order a prospective increase in alimony based on a possible future event without first finding when—or even whether—such an event will occur. Instead, the court should have reserved the question of a possible change in alimony for a later petition to modify the alimony award should Jennifer's housing situation change.

¶6 "A prospective change in alimony alters the award to which the recipient spouse would otherwise be entitled based on the trial court's anticipation of a future event that will materially change the parties' circumstances." *Boyer v. Boyer*, 2011 UT App 141, ¶ 15, 259 P.3d 1063. But because "the trial court will be better able to make an educated adjustment when and if [a possible future] event actually occurs," *id.*, "prospective changes to alimony are disfavored," *Richardson v. Richardson*, 2008 UT 57, ¶ 10, 201 P.3d 942. Indeed, they are appropriate "only as to future events that are 'certain to occur within a known time frame.'" *MacDonald v. MacDonald*, 2018 UT 48, ¶ 40, 430 P.3d 612 (quoting *Richardson*, 2008 UT 57, ¶ 10). Thus, in *Richardson*, a prospective change in alimony was appropriate where it was based on events that were certain to occur on specified dates. *See* 2008 UT 57, ¶¶ 10–11. In contrast, "a plan to retire, without actually retiring, would be insufficient to justify a prospective alimony reduction." *Id.* ¶ 10.

¶7 Here, the district court ordered Hugh to pay a prospective alimony increase of $1,000 per month when "Jennifer secures her

own housing." Other than noting that Jennifer was "residing with her mother rent free right now," the court made no factual findings regarding her future housing. It did not find that it was "certain" that Jennifer would secure her own independent housing, much less that it would occur "within a known time frame." *See id.* Indeed, it could not have so found absent any indication that Jennifer was actively searching for independent housing, that she intended to move out of her mother's home within a certain timeframe, or that her current living arrangements would be short-lived. The amount of the appropriate increase was also necessarily speculative. The $1,000 may have been a solid estimate based on current conditions, but either high or low depending on when and whither she relocates—if she does. The prospective modification to the alimony award was thus improper under *Richardson* and its progeny, even though the court's desire for efficiency is understandable.

¶8      Jennifer argues that "[h]ousing was not considered by the court to be some 'future' event." Rather, she contends the court ordered the alimony increase with the goal of "restor[ing] the parties to the same standard of living that existed during the marriage," and because an independent living situation had been Jennifer's standard of living during her marriage, the court properly determined that she was entitled to monthly alimony payments in the amount of $1,830. In support of this argument, she relies on *Sauer v. Sauer*, 2017 UT App 114, 400 P.3d 1204, in which we affirmed the trial court's decision to base part of its alimony award on the payee's future expected housing expenses. *See id.* ¶ 10. In *Sauer*, the trial court based its decision on the facts that the payee "live[d] in a trailer on a friend's property" and that "it [was] unknown how long a person can survive on the good nature of a friend." *Id.* (quotation simplified). We noted that the court's "determination ma[de] conceptual sense" because "[i]n the aftermath of a separation, a party may temporarily return to his or her parents' home, shelter

with friends, or become homeless and thus incur no actual housing expenses." *Id.* ¶ 10 n.3. In such situations, "the court may consider what constitutes a reasonable rental or mortgage payment in the relevant area for housing similar to the housing previously shared by the parties." *Id.*

¶9    Although the district court in this case would have been entitled to make such a determination *if* it had found that Jennifer's living situation with her mother was a temporary byproduct of the divorce, as with the examples mentioned in *Sauer*, the court took a different course. Instead of ordering Hugh to immediately begin making monthly payments of $1,830—as would have been consistent with the approach taken in *Sauer*—the court determined that a monthly alimony award of $830 was sufficient to maintain Jennifer's standard of living while she lived with her mother. The court then made the $1,000 increase in alimony conditional on Jennifer securing her own housing at some later date. The increase was unquestionably a prospective change to its alimony award because it was based "on the trial court's anticipation of a future event that will materially change the parties' circumstances," i.e., a change in Jennifer's living situation. *See Boyer*, 2011 UT App 141, ¶ 15. Thus, the court erred in ordering the prospective increase without first concluding that the material change was "certain to occur within a known time frame." *See Richardson*, 2008 UT 57, ¶ 10.

¶10    To be sure, the uncertainty of whether or when Jennifer would secure her own independent living arrangement does not undercut her ability to do exactly that at some future date and to seek a corresponding increase in the amount of her alimony. The district court already determined that she would be entitled to an increase in that event. But the proper procedure for seeking an increase in alimony, should she eventually secure other housing, would be for her to file a petition to modify the alimony award. *See* Utah Code Ann. § 30-3-5(10)(a) (LexisNexis Supp. 2020). Where an anticipated event is too speculative for

the court to consider in its alimony determination at the time of divorce, as is the case here, "the court may . . . delay the determination" by entering "findings indicating that the future [event] has not been considered in making the present award" because material information regarding the future event was unavailable to the court at the time of the divorce decree, thereby avoiding future dismissal of the petition to modify on foreseeability grounds. *MacDonald*, 2018 UT 48, ¶ 35 (quotation simplified). *See id.* ¶¶ 34–36, 40–41.

¶11　We therefore vacate the portion of the court's decree prospectively increasing the alimony award and remand for the court to enter the necessary findings so that the issue is preserved for future resolution and the determination can be made later upon a petition to modify, with any "foreseeability" argument Hugh might otherwise be inclined to make being effectively foreclosed.[3]

––––––––––

3. Because Hugh prevails on appeal, we deny Jennifer's request for attorney fees, premised on rule 33 of the Utah Rules of Appellate Procedure.