**2024 UT App 163**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ALLEN MICHAEL ALLRED,
Appellant

No. 20230738-CA

STATE OF UTAH,
Appellee,
*v.*
MOISES SOMBRA-DELGADO,
Appellant

No. 20220673-CA

STATE OF UTAH,
Appellee,
*v.*
SEVERO GONZALO VINE,
Appellant

No. 20221058-CA

Per Curiam Decision
Filed November 7, 2024

Brian Craig, Attorney for Appellant
Allen Michael Allred

Sarah J. Carlquist, Attorney for Appellant
Moises Sombra-Delgado

Ann Marie Taliaferro, Attorney for Appellant
Severo Gonzalo Vine

Sean D. Reyes and Andrew F. Peterson,
Attorneys for Appellee

———————

Before Judges Orme, Tenney, and Luthy.

———————

PER CURIAM:

¶1      In each of the above-captioned cases, a defendant has appealed his conviction, the State has assigned a particular attorney to represent it on appeal, and the State has requested a large number of extensions in which to file its responsive brief. Of note, this court previously granted the equivalent of five 30-day extensions in *State v. Allred*, eight 30-day extensions in *State v. Vine*, and sixteen 30-day extensions in *State v. Sombra-Delgado*. In each case, the State then requested an additional extension, and the defendants' responses to these most recent requests were varied. In *Allred*, the defendant filed written oppositions to several of the State's most recent requests. In *Vine,* the defendant informed the State by email that he "did not stipulate" to the State's proposed extension of time. In *Sombra-Delgado*, the defendant stipulated to the State's most recent request. In response to the most recent requests, this court ultimately issued an order in each case granting the State additional time, but the court then gave the State a final deadline accompanied by language that, with slight variations between the cases, stated that the State should anticipate receiving no further extensions.

¶2      Through the Director of the Criminal Appeals Division of the Utah Attorney General's Office, the State has now filed a joint motion to reconsider these orders. In *Allred*, the defendant opposed the motion to reconsider, giving this court multiple reasons why he believes the State should not be given any more time in which to file its brief. In *Vine*, the defendant also filed an opposition to the motion, albeit in more cursory terms, primarily

pointing out that, with the final extension, the State will have had 74 more days to file its brief than the defendant took to file his. In *Sombra-Delgado*, the defendant remained silent on the motion to reconsider.

¶3     In recent years, this court has seen a marked uptick in the number of requests that it has received for extensions in criminal appeals, and these requests have come from both sides. There are many reasons why criminal appeals proceed somewhat differently than civil appeals when it comes to the time allotted for filing briefs. Unlike civil litigation, where parties are typically represented by privately retained counsel, one side in a criminal appeal is represented by the government, and its appellate attorneys thus have no ability to decline cases. In the vast majority of appellate cases, the defendant is represented by appointed counsel, and these attorneys are under similar constraints. Moreover, publicly funded prosecutors and defense attorneys are subject to budget and staffing limitations that are imposed on them by governments. In past discussions, we have been consistently and reliably told by both sides that caseloads in criminal cases have risen over the past several years at rates that exceed the creation of new attorney positions by the involved governments.

¶4     As these caseloads have risen, the number of extension requests received by this court has risen too. For a time, both sides were routinely stipulating to each other's requests. But in recent years—and, more particularly, in recent months—an increasing number of defendants have begun opposing the State's requests after the State has received a number of extensions. (For its own reasons, the State has almost uniformly chosen not to oppose requests for additional time filed by defendants at the appellate level.) As a result, this court has been forced to issue rulings regarding contested motions for extra time in an ever-growing

number of cases. This new field of extension-related litigation has imposed great demands on attorneys, judges, and court staff alike. In one of the three cases at issue here, for example, the number of pages devoted to litigating the State's contested extension requests has now exceeded the number of pages that are in the merits brief that the defendant has already filed.

¶5 Given that the State has filed a consolidated motion to reconsider in these cases that is actively opposed by two of the three defendants, and given that this contested motion is part of an ongoing pattern of briefing delay that does not seem to be abating, we think it appropriate to issue this published opinion to explain our reasons for denying the State's motion to reconsider. In doing so, we have no desire to embarrass any attorney or any office. Rather, we hope to provide some insight and clarity regarding our processes for the benefit of those involved in the criminal appeals system, and we likewise seek to settle some of the recurring issues that have been repeatedly raised (and, without published precedent, will likely continue to be raised) in extension disputes in criminal appeals

¶6 Under rule 26(a) of the Utah Rules of Appellate Procedure, an appellant is given 40 days to file an opening brief, and the appellee is then given 30 days to file a responsive brief. Pursuant to rule 22(b), a party may file a motion for an extension of these initial deadlines. At its outset, rule 22(b) states that "[m]otions for an enlargement of time for filing briefs beyond the time permitted by stipulation of the parties under Rule 26 are not favored." Utah R. App. P. 22(b)(1). Under the applicable portion of rule 26, the time for filing a brief may be extended by stipulation of the parties "for no more than 30 days." *Id.* R. 26(a). Stopping here, we note two things of significance: first, rule 22(b) puts its thumb on the scale against a party receiving additional extensions after the single stipulated 30-day extension authorized by rule 26(a); and

second, these rules contemplate that it matters whether the other side has stipulated.

¶7　Although additional extensions are, by rule, expressly disfavored, they are not categorically prohibited. Instead, rule 22(b)(2) states that "[t]he court for good cause shown may upon motion extend the time prescribed by these rules," and it further provides that "[f]or the purpose of this rule, good cause includes, but is not limited to, the complexity of the case on appeal, engagement in other litigation, and extreme hardship to counsel." *Id*. Under the plain language of this rule, the question thus becomes whether there is "good cause" for granting additional time. And while the starting place for that analysis is the three enumerated factors, the rule's use of the phrase "includes, but is not limited to" means that these three factors are not exhaustive. This reality is also reflected by the phrase "good cause" itself. The phrase "good cause" is used in many places in the law, and when it is, it commonly connotes a holistic inquiry. *See, e.g.*, *Morris v. Department of Workforce Services*, 2012 UT App 293, ¶ 4, 288 P.3d 617 (per curiam) (noting that the "ultimate decision as to whether good cause exists is a mixed question of law and fact" that takes into account "the totality of facts presented" (cleaned up)).

¶8　It is also significant that rule 22(b)(2) uses the word "may." "The plain, ordinary, and accepted meaning of the word 'may' is permissive or discretionary, generally indicating that an individual is either permitted or has a possibility to do something." *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 25, 48 P.3d 895 (cleaned up). The rule's use of this permissive word appears to be no accident. In the broader judicial system, certain decisions are understood to be discretionary with the responsible court. And among those kinds of decisions, case management decisions and decisions about continuances are perhaps the most quintessentially discretionary decisions that courts are allowed to

make. *See, e.g.*, *Brown v. Glover*, 2000 UT 89, ¶ 43, 16 P.3d 540 ("Trial courts have substantial discretion in deciding whether to grant continuances, and their decision will not be overturned unless that discretion has been clearly abused." (cleaned up)); *Jensen v. Ruflin*, 2017 UT App 174, ¶ 23, 405 P.3d 836 ("A district court is endowed with inherent power to manage its docket, and we accordingly review its decisions in this arena only for abuse of discretion." (cleaned up)); *State v. Bergeson*, 2010 UT App 281, ¶ 7, 241 P.3d 777 ("It is clear that the district court exercises the discretion to manage its docket and set firm deadlines for motion practice. Similarly, the district court has considerable discretion to determine whether a litigant has demonstrated good cause to file a motion after a deadline is missed." (cleaned up)). So here, insofar as the rule states that upon a showing of good cause, the appellate court "may" grant an extension, the rule contemplates that the decision of whether to grant the requested extension is one that is left to the discretion of the appellate court.

¶9    By statute, the court of appeals "sit[s] and render[s] judgment in panels of three judges," and the panel composition is assigned "by random rotation of all judges" on the court. Utah Code § 78A-4-102(2)(a), (b). By practice, the court of appeals has a rotating law and motion panel whose composition changes each month. When a motion for an extension is filed, the motion and any opposition are submitted to that month's assigned panel. When this occurs, the assigned panel determines whether there is good cause to grant the requested extension.

¶10    Pursuant to rule 22(b)(2), the assigned panel thus considers such things as the "complexity of the case on appeal," counsel's "engagement in other litigation," and any "extreme hardship to counsel" that may result from granting or denying the request. Beyond these enumerated factors, panels of this court commonly consider other relevant factors, including whether the request is

stipulated or opposed, whether the defendant is incarcerated, and the nature of the crime at issue.

¶11 Panels also take into account the total number of extensions that both the requesting party and the other party have previously received in the case. After all, the people of Utah can rightly expect that their justice system will seek to decide cases, including appeals, within a reasonable period of time. When a requesting party has not received many prior extensions, the court's practice has been to liberally grant the request. But as the number of requests in a case increases, the court necessarily takes the past delays into account in determining whether there is good cause for granting another extension. In such instances, it matters whether the other party actively opposes the request, and as a matter of fairness, it likewise matters how many extensions the opposing party previously received. These things are not dispositive, but they are also not meaningless. While the party that is requesting the extension certainly has its own interests at stake in the appeal, the other side does too, and the rules simply do not contemplate that one side's interests unilaterally control the inquiry.

¶12 In each of the appeals at issue in this motion to reconsider, a randomly assigned law and motion panel considered the various factors that were properly before it and then issued an order. In each case, the assigned panel granted the State's latest request for more time, but, in consideration of the various appropriate factors, the panel also concluded that the case had reached a point where it would no longer be appropriate to grant additional extensions. The panel thus ordered the brief to be filed by a set date.

¶13 In the motion to reconsider at issue, the State now asks the court to revisit those prior orders. For clarity, we note that this

motion was assigned to the law and motion panel that was constituted at the time the motion to reconsider was filed (as opposed to the prior panels that issued the orders in question). In the motion to reconsider, the State offers several reasons why it believes this court should reconsider those prior orders and be willing to grant additional extensions in the three cases.

¶14  The State's first and primary argument—both in this motion to reconsider, as well as in many prior cases in which extension requests have been opposed—has to do with resource allocation. The State strenuously argues that the Criminal Appeals Division of the Utah Attorney General's Office (which represents the State in most criminal appeals) is under-resourced and simply does not have the capability to file briefs in a more expeditious manner.

¶15  The court appreciates the work done by the Criminal Appeals Division—both currently and over the years. Its attorneys have consistently represented the State's interests capably and well. (For that matter, the court is appreciative of the similarly laudable work commonly done by the publicly appointed attorneys who represent criminal defendants on appeal.) The court also appreciates the demands that are placed on the State's attorneys by virtue of what are essentially non-declinable caseloads. But the same dynamics are also largely present for publicly appointed appellate defense attorneys, yet those attorneys commonly (though not always) file briefs within timeframes shorter than those requested by the State.[1]

---

1. To be clear, the court's concerns about the delays in criminal appeals are not one-sided. Although the State does not oppose extension requests from defendants, the court has on its own

(continued…)

¶16 This suggests that at least some part of the dynamic may be attributable to the amount of time the State chooses to devote to each case, which is something that, financial resource-allocation problems aside, is within the State's control. And this is also something that, at a generalized level, is not unique to the criminal appeals process. For budget, workload, or other reasons, public and private attorneys alike must routinely decide how much time can be devoted to any particular motion or brief, and it is the rare situation in which an attorney could not spend even more time perfecting a filing if time or resources were not an issue.

¶17 In any event, we do recognize that a sizeable portion of the problem here seems attributable to financial resource allocations for the offices that employ the public-sector appellate attorneys. But as counsel in *Allred* points out in his opposition, publicly available information suggests that there are hundreds of attorneys within the Utah Attorney General's Office, and the Attorney General could in theory choose to make different personnel allocation decisions within the office. And because it is the State as a whole, and not the Utah Attorney General's Office or the Criminal Appeals Division, that is ultimately the party in question, the Legislature could also, if it chose, allocate more resources to the office.

¶18 And while acknowledging that such solutions may be difficult to enact, especially in the short term, the court ultimately believes that it would be unfair to force individual defendants to automatically bear the brunt of decisions made by the Attorney

---

initiative capped defense-side requests for excessive extensions in many cases. And in a few recent instances, the court issued sua sponte orders to show cause where particular defense-side attorneys who were representing defendants as appointed counsel had engaged in patterns of extreme and excessive delays.

General or the Legislature. In many criminal appeals, the defendant is incarcerated, so any delay affects that defendant in a very direct way. Beyond that, in some cases, this court reverses. As a result, excessive delays during the briefing process may have downstream effects in terms of evidence and memory loss if the case needs to be retried. Indeed, the very reason why the court of appeals was created was to help ameliorate the long delays that had crept into the appellate system by a previously overworked supreme court, so it would undermine the purpose of this court to allow its own extension practice to be employed in a way that creates excessive delays at the briefing stage.

¶19 We note that we are not alone in concluding that, when a case has reached some outer point of delay, resource allocation issues created by governments no longer justify granting additional extensions to government attorneys. In a published order, for example, a judge of the Second Circuit observed, "If a case must occasionally be reassigned to another attorney in order to meet a deadline, so be it. If the staffing pattern in a law office or government agency is insufficient to meet judicially imposed requirements, the office or agency must bear the ultimate responsibility." *United States v. Raimondi*, 760 F.2d 460, 461 (2d Cir. 1985); *see also Larue v. Derwinski*, 2 Vet. App. 386, 386-87 (1992) (stating that while the court was "sympathetic" to the resource and staffing problems of a government attorney and the office in question, the court's concern about "fairness to [the] appellant" should still be taken into account, and further noting that for the "appellant involved," the "delaying effect" would be "the same" regardless of the reasons for the government's delay).

¶20 To be clear, this court has been and will continue to be cognizant of the workload demands on the attorneys for both sides. And to again stress some of the points already made above, the court *does* take these demands into account, and, even when

there has been an opposition from the other side, the court *does* routinely grant a substantial number of extensions to each side in a criminal appeal. But as noted, the ultimate decision remains discretionary with the court. And in the court's view, resource allocation problems attendant to the assigned offices are not the only factor to be considered and, at some point, can be outweighed by other factors.

¶21 This was the judgment of each of the assigned panels here. As noted, before the State filed the extension requests at issue in this motion, the court had already granted the equivalent of five 30-day extensions in *Allred*, eight 30-day extensions in *Vine*, and sixteen 30-day extensions in *Sombra-Delgado*. In each of these cases, the number of extensions already given to the State equaled or exceeded the number of extensions granted to the other side. And in each of the motions at issue, this court granted the State's latest request (in one case—*Allred*—extending the State's deadline by 85 days instead of the 31 days it requested) before stating that no further extensions would be granted.

¶22 But at some point, a panel may conclude that it would no longer be reasonable to grant a party any more time in which to file its brief. Though such decisions are heavily context-dependent (and, also, are almost never published), we note that in one prior case, we limited the extension period to seven months. *See Provo City v. Stacy*, 2000 UT App 337U, para. 3 (per curiam). In another, we concluded that, even with "the workload of a public defender," "nearly a hundred days is more than enough time to prepare" a brief "in a professional manner." *Ogden City v. Stites*, 2002 UT App 357, ¶ 2, 58 P.3d 865. And a review of cases from elsewhere shows that other appellate courts were likewise unwilling to grant extensions in ranges similar or even narrower than those imposed in the cases before us in this motion. *See, e.g., Patterson v. U.S. Virgin Islands*, 597 F. App'x 671, 673 (3d

Cir. 2015) (expressing the court's "disappointment" after the government failed to file a brief after two previous extensions had been granted); *IDHW v. Doe*, 542 P.3d 295, 296 (Idaho 2024) (per curiam) (denying the appellants' motion to reconsider a third extension request and denying the appellants' motion for a fourth extension); *Lawrence Sav. Bank v. Garabedian*, 727 N.E.2d 97, 99, 102 (Mass. App. Ct. 2000) (holding that a single justice of the court had not abused his discretion when he denied the appellant's second request for an extension, particularly where the appellee had "opposed the motion" and argued that "it would be prejudiced by further delays"); *Castl v. Pennymac Holdings, LLC*, No. 82296, 2022 WL 1537171, at *3 (Nev. May 13, 2022) (stating that the court previously denied the appellant's eighth request for an extension of time to file the opening brief because the appeal had already been pending for 15 months and granting appellee's motion to dismiss the appeal); *Chavez v. Rasco*, No. 03-24-00121-CV, 2024 WL 4643933, at *1 (Tex. App. Oct. 31, 2024) (denying the appellant's seventh request for an extension of time to file the opening brief and dismissing the appeal because when granting his sixth request, the court advised the appellant that failure to file the brief by the extended date might result in dismissal of the appeal "for want of prosecution"); *Newfield v. State*, 766 S.W.2d 408, 409 (Tex. App. 1989) (denying the State's fourth request for an extension of time to file the opening brief and noting that in granting the third extension the court cautioned that no further extensions would be granted).[2]

---

2. While there are of course differences between the various state systems and the federal system, it appears that in the federal appellate system, it is uncommon for a federal appeals court to grant more than two extensions of time to file an appellate brief. *See* 1 Federal Criminal Appeals § 6:123.

¶23    Thus, the court has carefully considered the State's arguments regarding its available resources. But those realities were taken into account by the panels that considered the original motions. In the view of both those panels and this one, it is appropriate under the broader circumstances of each case to impose a deadline for the State to file its brief.

¶24    Second, in its motion to reconsider, the State suggests that a particular defendant's position regarding an extension request has been given too much importance in the court's decision-making. Expounding on this, the State asserts that a "troubling and likely unintended consequence" of taking the defendant's position into account is that it gives an advantage to defendants who have access to "[p]rivately retained counsel." But this is an adversarial system, and the court fundamentally disagrees with any suggestion that the other side's opposition to a motion should not at least be taken into account. And this is particularly so regarding a motion like this one that is akin to a continuance request and thus directly impacts the other side on such an obvious, practical level. In addition, it has not been the experience of the court in recent months that the oppositions to the State's extension requests have been primarily filed by privately retained attorneys. If anything, the opposite is true, with a significant majority of the opposed requests coming in cases involving appointed appellate counsel.

¶25    Third, the State points to circumstances relating to the particular attorney that the State has assigned to each of these three cases.[3] The State notes that the attorney is a part-time employee, and it further notes that the attorney has time

---

3. In the caption to this opinion, we have listed only the attorney who filed the motion to reconsider, and this attorney is not the attorney who is currently assigned to the underlying cases.

constraints such as attending multiple moots, editing "junior attorney's filings," and serving on a rules committee. In many other cases involving opposed extension requests, the State has commonly given similar reasons relating to the workload demands on its other attorneys (albeit without the part-time component that seems unique to this attorney).

¶26 The court appreciates the importance of things such as mooting, internal mentoring, and serving on rules committees. And the court further appreciates the work of this attorney, which has been exemplary. But these additional obligations are all voluntary. And again, defense-side attorneys have similar constraints, and yet the institutional defense-side appellate attorneys are not requesting, on average, the same number of extensions requested by the State.

¶27 Perhaps more importantly, the court's orders do not contemplate that any particular attorney must represent the State in any particular case. If a particular attorney has specific demands on his or her time, the State is certainly free to adjust its case assignments, either at the outset or midstream if it becomes clear that the attorney will not be able to file a brief within timelines imposed by the court. But while the court has accounted for, and will continue to account for, the demands on an individual attorney in its decisions, no one factor is or can be dispositive in the discretionary decision before the court in these requests. And at some point, if there have already been substantial delays in a case, and if a defendant is now actively asserting his or her own interests, the State's resource constraints and assignment decisions must yield so that the case can be submitted to the court for deliberation and decision.

¶28 Finally, because the court has now imposed firm deadlines in these cases, and since those deadlines, in the State's view,

20230738-CA
20220673-CA
20221058-CA                14                2024 UT App 163

conflict with each other, the State's reconsideration motion asks this court to "identify which of the three briefs it wants filed first." To the extent that the State is suggesting that the court should insert itself into the State's decisions about which attorney should write which brief and in what order, the court declines. Even if the court administratively could do this, it may present separation of powers problems for the court to do so. The only thing the court can or should do is make good cause determinations based on the information before it.

¶29    In sum, the decision about whether good cause exists to grant an additional extension is one that is squarely within the discretion of the court. And by rule, extensions beyond an initial stipulated extension are disfavored. Even so, the court has been cognizant of the unique demands placed on public-sector attorneys, and the court has been and will continue to be willing to grant a reasonable number of extensions in any case. But there comes a point at which it becomes unreasonable and unjust to allow the briefing process to essentially extend indefinitely. At some point, the briefs simply must be submitted so that the court can begin its own work of deciding the appeal. As a result, when a panel of this court has considered the relevant factors and has determined that a brief must be filed by a certain date, that decision will remain the order of the court absent some truly extraordinary or emergency circumstance.

¶30    For the foregoing reasons, the State's motion to reconsider the orders at issue is hereby denied. The court also notes that it stayed the previously imposed deadlines pending its decision on this motion. Having now denied the motion, the court will issue orders in the affected cases setting forth new and final deadlines.

————————